**UNITED STATES of America,**

v.

**Coperquin GONZALEZ–ROQUE, a/k/a "Manuel Ledesma," Defendant.**

**No. 01 CR. 419 RWS.**

United States District Court,
S.D. New York.

Sept. 25, 2001.

Honorable Mary Jo White, United States Attorney for the Southern District of New York, New York, By Neil M. Barofsky, Assistant U.S. Attorney, Of Counsel.

The Legal Aid Society, Federal Defender Division, New York, By Jennifer Brown, Esq., Of Counsel, for Defendant.

## OPINION

SWEET, District Judge.

The defendant Coperquin Gonzalez–Roque ("Gonzalez–Roque") has moved pursuant to Rule 12, Fed.R.Crim.P. to dismiss the indictment filed against him charging him with a violation of Title 8, U.S.C. § 1326 for illegal entry after deportation on the grounds that the government cannot prove an essential element of the offense, namely, a valid deportation order, because the order entered violated due process and was fundamentally unfair. For the reasons set forth below, the motion is granted.

The issue presented is difficult—whether refusal to grant a fourth adjournment of a deportation hearing and failure to reopen that hearing under all the circumstances was a denial of due process. Because Gonzalez–Roque was acting *pro se*, because the submission for which the adjournment was sought was in fact received by the Immigration and Naturalization Service ("INS"), because the submission might have permitted an adjustment of Gonzalez–Roque's status to permit him to remain in the United States, and because Gonzalez–Roque was never notified of the receipt

of the submission nor was the hearing reopened, due process requirements were not met. Since Gonzalez–Roque's prior deportation order violated due process, it could not be used to establish an element of the criminal offense with which he is now charged.

### Prior Proceedings

The indictment against Gonzalez–Roque was filed on April 30, 2001, charging him in one count with illegally reentering the country in violation of Title 8, U.S.C. § 1326(a) and (b)(2). A pretrial conference was held on May 3 to schedule the proceedings at which time the defense indicated the likelihood that a motion would be filed. Time was excluded until the filing of the motion and the completion of briefing which occurred on July 13, 2001, at which time the instant motion was deemed submitted.

### The Facts

On June 3, 1993, less than a year after he entered the United States as a lawful permanent resident ("LPR"), Gonzalez–Roque was arrested and subsequently indicted on charges of attempted murder in the second degree, assault in the second degree, criminal possession of a weapon in the second degree, and robbery in the third degree, arising out of an incident which was alleged to have occurred in the early morning hours of June 3, 1993, when a building employee outside the apartment in which Gonzalez–Roque was staying told him to stop placing magazines in the hallway of the building and Gonzalez–Roque used a firearm to strike the building employee in the head and to shoot him four times, striking him once in the groin.

On June 12, 1993, Gonzalez–Roque pleaded guilty to criminal possession of a weapon in the second degree. The Presentence Investigation ("PSI"), which was prepared in anticipation of sentencing, reported that "the Defendant did not express any remorse for his actions." On August 17, 1993, Gonzalez–Roque was sentenced to two to six years' imprisonment. According to his criminal history sheet, on June 20, 1994, Gonzalez–Roque absconded from a temporary release program.

On October 5, 1994, deportation proceedings were commenced against Gonzalez–Roque, and the first deportation hearing was held on February 2, 1995 before Immigration Judge Joe Miller. At the hearing, Gonzalez–Roque stated that he wanted to represent himself. The Immigration Judge then questioned Gonzalez–Roque, who admitted that: (1) he was not a citizen of the United States; (2) he entered the United States as an LPR on August 3, 1992; and (3) he had been convicted of criminal possession of a weapon in the second degree in 1993. The Immigration Judge therefore found that Gonzalez–Roque was a deportable alien.

In response to questioning from the Immigration Judge, Gonzalez–Roque claimed that he was 19 years old. The Immigration Judge confronted Gonzalez–Roque with an interview in which Gonzalez–Roque told an Immigration Agent that his date of birth was September 15, 1973. Gonzalez–Roque then denied ever speaking to the agent. The Immigration Judge also noted that the visa application originally filled out by Gonzalez–Roque's stepfather also reported a September 15, 1973 birth date. In response, Gonzalez–Roque stated that when his stepfather originally registered Gonzalez–Roque's birth certificate in the Dominican Republic, he mistakenly provided the wrong birth date for Gonzalez–Roque, and that this error was reflected on his visa application. Gonzalez–Roque then claimed that he was actually born on September 23, 1974, which would have made him 20 years old at the time of the hearing.

The Immigration Judge then ascertained that Gonzalez–Roque's stepfather was a United States citizen and informed Gonzalez–Roque that if his stepfather were to file an I–130 petition on Gonzalez–Roque's behalf, there was a "chance" that Gonzalez–Roque "might" be able to remain in the United States. The Immigration Judge then gave Gonzalez–Roque a blank I–130 form and adjourned the proceedings until March 2, 1995. The Immigration Judge told Gonzalez–Roque that if he was unable to locate his stepfather and demonstrate that a completed I–130 petition would be forthcoming, the Immigration Judge would order Gonzalez–Roque deported at the next hearing.

On March 2, 1995, the deportation hearing resumed. Gonzalez–Roque reported that he had been unable to contact his stepfather, although he thought that his stepfather was living in Manhattan. The Immigration Judge informed Gonzalez–Roque that he would have one final chance to locate his stepfather, but that no further adjournments would be granted.

On May 19, 1995, the Immigration Judge continued the deportation proceedings. At the hearing it was noted that Gonzalez–Roque's mother, not his stepfather, had filed an I–130 petition on his behalf. Because Gonzalez–Roque's mother was not a United States citizen, approval of the petition could not assist Gonzalez–Roque. The Immigration Judge gave Gonzalez–Roque yet another adjournment and again warned Gonzalez–Roque that there would be no further adjournments.

A final hearing was conducted on July 5, 1995 at the Ulster Correctional Facility at Naponoch, New York. Gonzalez–Roque claimed that his stepfather had mailed in a completed I–130 petition. The Immigration Judge noted that no such petition had been received and briefly adjourned the hearing to check the mail room to determine if it had arrived. Gonzalez–Roque asked for an adjournment to present his copy of the I–130 petition to the Immigration Judge as proof that the form had been mailed. The request was denied. After learning that no such petition had been received, the Immigration Judge told Gonzalez–Roque that he would be given no more adjournments, but that he could raise this issue with the Board of Immigration Appeals ("BIA") on appeal. Gonzalez–Roque stated that he had a copy of the petition among his papers at the institution and that he had two years more to serve on his sentence. The Immigration Judge then rendered an oral decision and ordered Gonzalez–Roque deported.

Two weeks after the July 5, 1995 hearing, Adam Opaciuch, Assistant District Counsel for the INS at Naponoch in the Trial Counsel's Office, sent a letter to Jorge Apolo, Gonzalez–Roque's stepfather. In the letter counsel stated: "We are returning Form I–130 to you. The Form I–130 you forwarded must be processed ... in Burlington, Vt." With the letter counsel enclosed the completed Form I–130 and the accompanying money order. The return address on the letter from Opaciuch is the Ulster Correctional Facility, the same address to which Gonzalez–Roque had informed the Immigration Judge the form had been sent. Gonzalez–Roque was not advised of this letter, nor was the record reopened.

Gonzalez–Roque, still *pro se,* filed an appeal with the BIA on September 7, 1994. In his appeal, Gonzalez–Roque did not raise the issue he is now advancing for the first time, that the Immigration Judge had abused his discretion in not granting him an additional adjournment, and that this purported abuse of discretion had resulted in Gonzalez–Roque being unfairly denied an adjustment of status. Gonzalez–Roque's appeal made no mention whatsoever

of an attempt to adjust his status, but instead made that claim that:

> Appellant was deemed an illegal alien (status). Per 8 § 1433(a), appellant was eligible for a certificate of citizenship from the Attorney General, Appellant has proof, per sub(a)(5). And will be submitted forthwith the submitted brief.[1]

On November 4, 1996, the BIA considered Gonzalez–Roque's claim, and found it to be without merit. The BIA stated:

> Based upon our review of the record, we find that the decision of the Immigration Judge is proper and we adopt it. On appeal the respondent claims that he is a United States citizen, but he has not provided any support for his assertion. We therefore find that such claim is without merit. Accordingly, the appeal is dismissed.

On September 21, 1997, Gonzalez–Roque was deported to the Dominican Republic.

Gonzalez–Roque illegally returned to the United States sometime before January 9, 2000. On that date he was arrested for criminal possession of a controlled substance in the seventh degree. He pleaded guilty to this charge on January 10, 2000, and was sentenced to five days' community service. He was arrested again on November 6, 2000, for grand larceny in the third degree. On January 23, 2001, a complaint was sworn out in the Southern District of New York charging Gonzalez–Roque with illegal reentry, and an arrest warrant was issued. On April 10, 2001, Gonzalez–Roque was arrested on that warrant. On April 30, 2001, a Grand Jury in the Southern District of New York returned a one-count indictment charging Gonzalez–Roque with illegally reentering

the country in violation of Title 8, U.S.C. § 1326(a) and (b)(2).

### There Was A Violation of Due Process In The Deportation Process

■ Although it is difficult to raise the denial of a request for an adjournment to a constitutional level, under these facts a denial of due process occurred. The following facts are relevant: first, the deportation itself could not be accomplished for two years; second, Gonzalez–Roque had requested an adjournment to obtain the copy of Form I–130 which he claimed was among his papers at the institution; third, the Form I–130 was in fact received by the trial attorney, whether at the time of the hearing or at some other time, within two weeks of the hearing; fourth, Gonzalez–Roque, acting *pro se*, was not advised of its receipt; and finally, the hearing was not reopened to add the Form I–130 to the record. Gonzalez–Roque's due process rights were thus violated.

■ In order to meet its burden of proof in a prosecution for illegal reentry under § 1326, the government must establish, among other things, that the defendant has previously been deported. *See* 8 U.S.C. § 1326; *United States v. Paredes–Batista*, 140 F.3d 367, 376 (2d Cir.1998), *cert. denied*, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116 (1998), which he was, as found above.

Although the text of § 1326 does not require that the prior deportation have been "lawful," *see* 8 U.S.C. § 1326; in *United States v. Mendoza–Lopez*, 481 U.S. 828, 834–35 & n. 9, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the Supreme Court held that under the Due Process Clause, a prior deportation cannot be used to establish an element of a criminal offense if the deportation proceeding was unlawful. *Id.*

---

**1.** Although reference is made to a brief, it appears from Gonzalez–Roque's immigration file that the only other document submitted to the BIA was a letter from Gonzalez–Roque.

at 837, 107 S.Ct. 2148. Thus, if the deportation order is infected with defects that,

> "effectively eliminate ... the right of the alien to obtain [direct] judicial review," that deportation proceeding may be attacked collaterally in any subsequent proceedings that uses the deportation to establish an element of a criminal offense—such as a trial under 8 U.S.C. § 1326.

*United States v. Paredes–Batista,* 140 F.3d at 376 (2d Cir.1998) (*quoting Mendoza–Lopez,* 481 U.S. 828, 838, 107 S.Ct. 2148, 95 L.Ed.2d 772). *See generally Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well-established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Collateral attacks on prior deportation orders are governed by the illegal reentry statute under which Gonzalez–Roque is charged, Title 8, U.S.C. § 1326(d). It provides that:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

These three criteria are conjunctive and Gonzalez–Roque must satisfy all three to challenge the validity of his deportation under § 1326(d).

Section 1326(d) in effect thus codified the holding of the Supreme Court in *Mendoza–Lopez, supra,* 481 U.S. 828, 838, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), which held that a disposition in a deportation hearing cannot be used "to establish con-clusively an element of a criminal offense" unless that disposition was subject to judicial review. If defects in a deportation proceeding "effectively eliminated the right of the alien to obtain [direct] judicial review," that deportation proceeding may be attacked collaterally in any subsequent proceeding that uses the deportation to establish an element of a criminal offense—such as a trial under 8 U.S.C. § 1326. *Id.* at 838–39, 107 S.Ct. 2148. *See United States v. Sanchez–Peralta,* 1998 WL 63405 at *2 (S.D.N.Y. Feb.13, 1998) ("Section 1326(d) appears, at least in part, to codify the constitutional standards governing collateral attacks established in *United States v. Mendoza–Lopez.*").

### Under the Circumstances, Gonzalez–Roque Exhausted His Administrative Remedy

Gonzalez–Roque, as a *pro se* defendant under the circumstances, satisfied the exhaustion requirement of 8 U.S.C. § 1326(d)(1).

■ "An appeal from an IJ to the BIA, without more, generally suffices to satisfy an exhaustion requirement ..." *United States v. Johnson,* 2000 WL 620324, 2000 U.S. Dist. LEXIS 6633 (D.Conn.2000), *citing Mejia–Ruiz v. Immigration and Naturalization Serv.,* 51 F.3d 358, 364 (2d Cir.1995). BIA denied Gonzalez–Roque's appeal because he was not a United States citizen, but never reviewed his claim that he was entitled to an adjustment of status because the record did not reveal that the INS had, in fact, received Gonzalez–Roque's stepfather's completed I–130 petition.

Contrary to Gonzalez–Roque's contention concerning the BIA appeal, there are authorities to the effect that the issue to be exhausted must be raised. *Cortez–Acosta v. INS,* 234 F.3d 476, 480 (9th Cir.2000) (*quoting Vargas v. U.S. Dep't of*

*Immigration & Naturalization,* 831 F.2d 906, 907–08 (9th Cir.1987)). In *Cortez–Acosta,* the defendant argued to the Immigration Judge who conducted his deportation hearing that (1) he did not assist in the smuggling of illegal aliens; and (2) he maintained a domicile in the United States. The Immigration Judge rejected the defendant's claims and ordered him deported. The defendant appealed to the BIA, but only on the first ground—that there was insufficient evidence to support a finding that he assisted in alien smuggling. After the BIA dismissed his appeal, the defendant sought direct review in the Court of Appeals for the Ninth Circuit, where he tried to raise both of the issues that he had argued to the Immigration Judge, as well as an argument that he was deprived of due process. The Ninth Circuit found that it lacked jurisdiction over the due process and domicile claims because the defendant had failed to exhaust his administrative remedies by first raising those issues with the BIA. *Id.* at 480 ("Mr. Cortez–Acosta's appeal to the BIA did not address his domicile or due process issues at all, so we are precluded from reviewing those aspects of the administrative determination"); *see Vargas,* 831 F.2d at 907–08 (defendant precluded from raising due process claim that the Immigration Judge's deportation order was based on an inaccurate criminal history record where his notice of appeal to the BIA only challenged the Immigration Judge's denial of a waiver of deportation); *Jorge v. Hart,* 1997 WL 531309 at *13 (S.D.N.Y. Aug.28, 1997) (defendant could only raise issues on judicial review if they were first presented to the BIA).

■ Here, Gonzalez–Roque, *pro se,* failed to raise the issue which was the subject of the proceeding before the Immigration Judge, the adjustment of status as a LPR as a minor child of a United States citizen, but the issue was evident on the record below, even though the INS had failed to include the relevant form. In the case of a *pro se* appellant, the BIA should have reached the issue now presented to this Court. *See generally, Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). This record was sufficient to satisfy the exhaustion requirement, as was the case in *United States v. Johnson,* 2000 WL 620324, 2000 U.S. Dist. LEXIS 6633 (D.Conn.2000).

In addition, even if the Court were to agree with the government's argument that Gonzalez–Roque failed to raise the specific issue he now raises, Gonzalez–Roque is entitled to judicial review because the courts have made an exception to the exhaustion requirement for due process claims. *See Vargas v. United States,* 831 F.2d 906 (9th Cir.1987) ("due process claims generally are exempt from this procedural rule because the BIA does not have jurisdiction to adjudicate constitutional issues") (*citing Bagues–Valles v. INS,* 779 F.2d 483 (9th Cir.1985)) (holding that exhaustion requirement does not apply to due process claims that do not concern procedural errors correctable by the administrative tribunal).

This case is similar to *Sewak v. INS,* 900 F.2d 667, 671 (3rd Cir.1990) in which the court held that the petitioner did not fail to exhaust his administrative remedies because he did not learn of certain circumstances surrounding his original hearing until after he appealed to the BIA. Similarly, in this case, Gonzalez–Roque did not learn that the INS had received the proper I–130 form until six years after he filed his appeal with the BIA, when he received discovery in this case. Thus, at the time he filed his appeal with the BIA, he could not possibly have raised the issue of INS negligence in handling the document. *See United States v. Johnson, supra,* 2000 WL

620324, at *7, 2000 U.S. Dist. LEXIS 6633, at *26 ("where the claim did not ripen until after the administrative appeal, the court has relaxed the exhaustion rule").

The conclusion reached here is a logical extension of *Johnson* where the discretionary waiver issue had encompassed the unappealed stay denial. Under the circumstances here, the appeal constituted an exhaustion despite Gonzalez–Roque's failure to explicitly raise the adjustment issue in INS terms. Acting *pro se,* he sought to raise the issue as he may have understood it, his entitlement as a son of a United States citizen.

### Congress Deprived Gonzalez–Roque of any Opportunity for Judicial Review in Enacting the IIRIRA

■ Section 1326(d)'s second requirement is that the defendant show that the deportation proceedings improperly deprived him of the opportunity for judicial review. 8 U.S.C. § 1326(d)(2). The BIA decided the Gonzalez–Roque appeal on November 4, 1996. On September 30, 1996, Congress enacted IIRIRA, which altered the availability of judicial review of deportation orders against aliens convicted of criminal offenses. Because Gonzalez–Roque's deportation proceedings commenced before April 1, 1997 and the deportation order became administratively final after October 30, 1996, his case is governed by the transitional provisions of the IIRIRA. *See Henderson v. INS,* 157 F.3d 106 (2d Cir.1998). Those rules provided that "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in [certain sections of the code]." *Henderson, supra,* at 117, *citing* IIRIRA § 309(c)(4)(G).

As a result of Congress' limitation of his right to appeal, no judge has reviewed Gonzalez–Roque's claim that he was eligible for relief from deportation, or that he was denied due process by the INS negligence in being unable to locate the I–130 form and the Immigration Judge's refusal to adjourn the hearing to permit Gonzalez–Roque to demonstrate that the form had, in fact, been properly mailed.

It is the government's contention that Gonzalez–Roque should have sought habeas corpus relief. However, in 1995 the right to seek collateral review through a writ of habeas corpus was not well-established, and opposed by the government. *See Jorge v. Hart,* 1997 WL 531309 (S.D.N.Y.1997) (Mukasey, J.) (declining to rule on the question of the court's subject matter jurisdiction because of the difficulty of resolving the issue of an alien's right to seek review through a petition for habeas corpus). It was not until recently, six years after Gonzalez–Roque's deportation hearing, that the Supreme Court finally answered the question of whether aliens may seek review of removal orders "in the Court of Appeals ... in the district court ... or not at all." *See Calcano–Martinez v. INS,* — U.S. ——, 121 S.Ct. 2268, 150 L.Ed.2d 392, 2001 WL 703943 (U.S.); *INS v. St. Cyr,* — U.S. ——, 121 S.Ct. 2271, 150 L.Ed.2d 347, 2001 WL 703922 (U.S.). Until the Supreme Court's recent rulings, it was not clear even to skilled lawyers that Gonzalez–Roque had a right to file a writ of habeas corpus. It certainly was not known to him. Thus, his failure to file a habeas petition should not be deemed a failure to met his burden under § 1326(d)(2).

In addition, just as Gonzalez–Roque could not have raised the issue of the INS negligence in handling the I–130 form in his appeal to the BIA, he could not have raised the issue in a habeas petition because he only recently became aware of new facts. For these reasons, Gonzalez–Roque was effectively denied judicial review.

### The Deportation Order was Fundamentally Unfair and Led to Actual Prejudice

Gonzalez–Roque's due process rights were violated because the defects in the deportation proceedings made his lawful claim for relief merely illusory and he therefore meets the requirement of 8 U.S.C. § 1326(d)(3).

■ The Second Circuit has stated in *Paredes–Batista, supra,* that a defendant need not make a showing that he would have been granted relief in order to demonstrate prejudice on a collateral attack. In *Paredes–Batista,* the defendant charged with illegal reentry collaterally attacked his deportation order on ineffective assistance grounds. Although the Second Circuit rejected the appellant's claim on the facts, it held that a defendant could succeed in a collateral attack on a deportation order if he demonstrated that defects in the deportation proceedings "effectively deprived him of his right to direct appeal of the IJ's decision" and that the deprivation prejudiced him. The Court held that the defendant could show prejudice in one of two ways:

> To succeed in a collateral attack, [the defendant] would have to show that he was prejudiced by the deprivation of his right to direct appeal—that is, he would have to show that "a fully informed exercise of the right of direct appeal would have yielded [him] relief ... from deportation." ... A showing of prejudice may also be based on defects in the deportation proceeding itself—if they rendered the proceeding so "fundamentally unfair in some respect that the alien would have been entitled to relief on direct appeal." [2]

**2.** *Cf. Waldron v. INS,* 17 F.3d 511, 518 (2d Cir.1993) (when deportation proceeding violated alien's statutory or constitutional rights,

*Paredes–Batista,* 140 F.3d at 378 (citations omitted). Thus, under *Paredes–Batista,* Gonzales–Roque's may be invalidated on collateral attack.

■ In addition, Gonzalez–Roque was actually prejudiced by the due process violation, as there was a real possibility that he would have succeeded in obtaining an adjustment of status if his completed I–130 form had been presented to the Immigration Judge. In order to demonstrate actual prejudice, Gonzalez–Roque need not show that he would certainly have been granted relief. He need only show that there was a "reasonable likelihood" of obtaining discretionary relief. *United States v. Sanchez–Peralta,* 97 Cr. 536(LAP), 1998 WL 63405 at *13 (S.D.N.Y. Feb. 13, 1998) (unpublished decision) (holding that a "reasonable likelihood" exists whenever "an alien has a meaningful chance to attain the relief he seeks, not just where he stands a very strong chance of attaining such relief."); *see also Rabiu v. INS,* 41 F.3d 879, 882–83 (2d Cir.1994) ("In order ... to show that his attorney's failure to file [a 212(c) application] caused him actual prejudice, [the alien] must make a prima facie showing that he could have made a strong showing in support of his application."); *United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996) (to succeed in collateral attack on deportation order, defendant charged with illegal reentry is required only to show that he had "plausible grounds for relief," not that he would have been granted relief).

Gonzalez–Roque had contended that he was eligible for relief under § 245(a). At the time of his deportation proceedings, a deportable alien was eligible for an adjustment of status under this section if he met the following requirements:

> deportation is fundamentally unfair and order can be vacated on direct appeal without showing of prejudice).

(1) He must make an application for adjustment of status;

(2) He must be eligible to receive a visa and be admissible for permanent residence; and

(3) An immigrant visa must be immediately available at the time of application.

Once Gonzalez–Roque's stepfather's I–130 form had been approved, Gonzalez–Roque fell into the first-preference family visa category. In this category, an immigrant visa would have been immediately available to him. *See Matter of Gabryelsky,* Intl. Dec. 3212, 20 I & N Dec. 750, 1993 WL 495142 (BIA Nov. 3, 1993). Moreover, the adjustment of status effectively removes any firearms convictions as grounds for deportation. *Id.* Once Gonzalez–Roque's status had been adjusted, there would have been no further grounds for deportation, and no valid deportation order could have issued.

The government here has urged that Gonzalez–Roque was barred from the relief he sought because of his actual, as opposed to asserted, age. At his deportation hearing, Gonzalez–Roque explained that his date of birth was September 15, 1974, and that some of the immigration documents reflected an incorrect birth date. The government attached a number of documents which reflected a birth date of September 15, 1973. However, it has conceded in a footnote that a number of documents, including INS records, reflect Gonzalez–Roque's date of birth as September 15, 1974, making Gonzalez–Roque twenty years old and thereby eligible for an adjustment of status. Gonzalez–Roque's birth date of September 15, 1974, was confirmed by his mother. However, because of the refusal to grant any further adjournments, the Immigration Judge never reached the factual issue of Gonzalez–Roque's date of birth.

Finally, the government has taken the position that the Immigration Judge would not have exercised his discretion in Gonzalez–Roque's favor because of his record.

Gonzalez–Roque came to the United States as a teenager to live with his mother. At the time of the deportation hearing he had numerous immediate family members who were never given an opportunity to speak to the equities in favor of granting of the waiver. The I–130 form had not been made part of the record submitted by Gonzalez–Roque's stepfather, and at that time Gonzalez–Roque had a single firearms conviction and no other contact with the criminal justice system. Aliens with firearms convictions have been granted adjustment of status and prior to 1996, more than half of all petitions for waivers of deportation were granted. *See INS v. St. Cyr,* —— U.S. ——, ——, n. 5, 121 S.Ct. 2271, 2277, n. 5, 150 L.Ed.2d 347 (2001) (citing statistics indicating that 51.5% of the applications filed between 1989 and 1995 were granted).

Gonzalez–Roque need only prove that he had "a meaningful chance to attain the relief he seeks," not that he stood "a very strong chance of attaining such relief." *United States v. Paredes–Batista,* 140 F.3d 367 (2d Cir.1998). If Gonzalez–Roque had met all the eligibility requirements for an adjustment of status at a time when such adjustments were routinely granted, he would have had a "meaningful chance" of attaining relief from deportation.

### Conclusion

For the reasons set forth above, the motion of Gonzalez–Roque is granted and the indictment is dismissed since Gonzalez–Roque's due process rights were violated by the denial of the adjournment and the failure to open the record to include the Form I–130.

It is so ordered.