**UNITED STATES of America,**
**Plaintiff–Appellant,**

v̇.

**Coperquin GONZALEZ–ROQUE, also known as Manuel Ledesma,**
**Defendant–Appellee.**

**Docket No. 01–1509.**

United States Court of Appeals,
Second Circuit.

Argued: June 21, 2002.

Decided: Aug. 20, 2002.

Neil M. Barofsky, Assistant United States Attorney (Meir Feder, of counsel, for Mary Jo White, United States Attorney for the Southern District of New York), New York, NY, for Plaintiff–Appellant.

Philip L. Weinstein, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellee.

Before: McLAUGHLIN, CALABRESI, and B.D. PARKER, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

The Government appeals the dismissal of an indictment charging Coperquin Gonzalez–Roque with illegal reentry into the United States following deportation for an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). Gonzalez–Roque moved to dismiss the indictment on the grounds that procedural errors in the underlying deportation proceedings violated due process. The District Court (Robert W. Sweet, *Judge* ) agreed and dismissed the indictment. *United States v. Gonzalez–Roque,* 165 F.Supp.2d 577 (S.D.N.Y.2001). Because we find no denial of due process and because we find that Gonzalez–Roque neither exhausted his administrative remedies nor was deprived of an opportunity for judicial review of his deportation order, we reverse and remand.

## BACKGROUND

Gonzalez–Roque is a citizen of the Dominican Republic. He entered the United States as a lawful permanent resident in August 1992. Less than a year later, in June 1993, he was arrested and indicted for attempted murder in the second degree, assault in the second degree, and criminal possession of a weapon in both the second and third degrees. The charging documents reflect that, while cleaning an apartment, Gonzalez–Roque had placed magazines in the hallway of the building. When a building employee asked him to remove them, Gonzalez–Roque hit the employee in the head with a firearm and fired four shots at him, striking him once in the groin. Gonzalez–Roque pleaded guilty to criminal possession of a weapon in the second degree, and in August 1993 he was sentenced to two to six years' imprisonment.

In October 1994, while Gonzalez–Roque was incarcerated, the Immigration and Naturalization Service ("INS") commenced deportation proceedings at the Ulster Correctional Facility in Naponoch, New York. His due process claims arise from the conduct of these proceedings. On February 2, 1995, the first hearing was held before Immigration Judge Joe Miller (the "IJ"), at which Gonzalez–Roque represented himself. The IJ questioned Gonzalez–Roque, who conceded that: (1) he was not a citizen of the United States; (2) he entered the United States as a lawful permanent resident in August 1992; and (3) he had been convicted of criminal possession of a weapon in the second degree in 1993. The IJ found that Gonzalez–Roque was a deportable alien because of his aggravated felony conviction. *See* 8 U.S.C. § 1227(a)(2)(C) (2000). His conviction set an extremely high barrier for receipt of a deportation waiver, as the Immigration and Nationality Act ("INA") prescribes

that "[a]n alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States." 8 U.S.C. § 1228(c) (2000).

Notwithstanding this conclusive presumption, the IJ questioned Gonzalez–Roque to see if he qualified for any form of discretionary relief and determined that, in view of his prior criminal record, Gonzalez–Roque faced certain deportation unless he could obtain an adjustment of his immigration status to that of a lawful permanent resident.[1] In order to be eligible for an adjustment of status under section 245(a) of the INA: (i) the applicant must make an application for the adjustment; (ii) he must be eligible to receive an immigrant visa and be admissible for permanent residence; and (iii) the visa must be immediately available to him at the time of the application. 8 U.S.C. § 1255(a) (2000). Had Gonzalez–Roque submitted a proper application for adjustment of status, he would have satisfied the first two requirements. *See Matter of Gabryelsky*, 20 I. & N. Dec. 750, 753, 1993 WL 495142 (BIA Nov. 3, 1993) (finding that alien's conviction for criminal possession of a weapon did not render him inadmissible for purposes of section 245(a)). With regard to the third requirement, the IJ stated that Gonzalez–Roque's stepfather, who was a U.S. citizen, was "the only one that can file papers for you that might even give you a chance to stay" in the United States. The stepfather was required to file an I–130 petition, which, if approved, would have

made an immigrant visa immediately available to Gonzalez–Roque. *See* 8 U.S.C. § 1154(a)(1)(A)(i) (2000); 8 C.F.R. § 204.1(a)(1) (2001). The IJ's inquiry was complicated by the fact that Gonzalez–Roque had given the INS and the IJ contradictory information concerning his date of birth and the citizenship of his parents. Nevertheless, the IJ granted Gonzalez–Roque three adjournments so that he could solicit the petition from his stepfather.

At the February 2, 1995 hearing, the IJ gave Gonzalez–Roque a blank I–130 form and adjourned the proceedings until March 2, 1995. The IJ told Gonzalez–Roque that if he were unable to locate his stepfather and demonstrate that the stepfather would file the petition, Gonzalez–Roque would be ordered deported at the next hearing. At the March 2 hearing, Gonzalez–Roque told the IJ that he had been unable to contact his stepfather, in part because his telephone privileges at the correctional facility had been revoked. The IJ informed Gonzalez–Roque that he had one final chance to locate his stepfather and "prove ... that your father [sic] is willing and going to file" the I–130 petition. He adjourned the hearing until March 30 and stated that no further adjournments would be granted.

The case reconvened on May 19, 1995. At this hearing, it was discovered that Gonzalez–Roque's mother, who was not a U.S. citizen, had improperly filed an I–130

---

1. Although Gonzalez–Roque entered the country as a lawful permanent resident, he became a deportable alien as a result of his conviction. The adjustment of status procedure allows a qualifying deportable alien to change his status to that of an alien who had not committed the offense which otherwise rendered him deportable. *See Tibke v. INS*, 335 F.2d 42, 44–47 (2d Cir.1964) (holding that adjustment of status was permitted even if deportable alien had entered the country as

a lawful permanent resident); *Matter of Rainford*, 20 I. & N. Dec. 598, 600–02, 1992 WL 323809 (BIA Sept. 9, 1992) (stating that alien who entered country as a lawful permanent resident would no longer be deportable on the basis of his conviction if granted adjustment of status); *id.* at 601 ("[A]n adjustment of status is merely a procedural mechanism by which an alien is assimilated to the position of one seeking to enter the United States.").

petition on her son's behalf. Gonzalez–Roque stated that his mother had filed the petition because his stepfather was out of the country. The IJ informed Gonzalez–Roque that the petition would not be approved and that only a petition from his stepfather could assist him. The IJ then adjourned the hearing one last time until July 5, stating that "[i]f you do not have an approved I–130 on July 5, I'm going to order you deported."

The final hearing was conducted on July 5, 1995. Gonzalez–Roque claimed that his stepfather had sent, by express mail, a completed I–130 petition to the Ulster facility. The INS attorney in attendance informed the IJ that the INS had not received the petition. The IJ then briefly adjourned the hearing so that the INS could check its mail room to determine if the petition had arrived. It had not. Gonzalez–Roque claimed he had a copy of the petition "in his property" and requested a fourth adjournment of the proceedings so that he could submit the copy as proof that the form had been mailed. The request was denied. The IJ told Gonzalez–Roque that he would be given no more adjournments, but that he could raise the issue with the Board of Immigration Appeals (the "BIA") on appeal. The IJ then rendered an oral decision ordering Gonzalez–Roque deported. The IJ's refusal to grant this fourth adjournment was the crux of Gonzalez–Roque's due process claim in the District Court. The IJ then gave Gonzalez–Roque an appeals package, which he stated must be presented to the BIA within ten days, and adjourned the hearing. With respect to the I–130 petition, the IJ told Gonzalez–Roque that "[a]ll you [have] to do is, tell [the BIA] what the Judge did

wrong and. get it there by the 17th [of July]."

At a certain point, the date of which is unknown, the INS office at the Ulster facility received an undated I–130 petition from Gonzalez–Roque's stepfather. On July 21, 1995, an INS attorney who had appeared for the INS in the Gonzalez–Roque case at the May 19 hearing, sent a letter to Gonzalez–Roque's stepfather, stating that: "We are returning Form I–130 to you. The I–130 you forwarded must be processed at the Eastern Adjudication Center in Burlington, Vermont."[2] Gonzalez–Roque was not advised of the letter, and claims that he was not notified that the INS had received the petition until discovery proceedings during his illegal re-entry prosecution. The whereabouts of the I–130 petition after the INS letter was sent to Gonzalez–Roque's stepfather are unclear from the record; there is no indication that his stepfather ever mailed a completed petition to Burlington.

In September 1995, Gonzalez–Roque, still *pro se*, filed an appeal with the BIA. This appeal, however, failed to raise the IJ's denial of his request for an additional adjournment to allow submission of his stepfather's I–130 petition and, in fact, did not mention the petition at all. His sole ground for appeal was:

> Appellant was deemed an illegal alien (status)[.] Per Title 8 § 1433(a) appellant was eligible for a certificate of citizenship from the Attorney General, Appellant has proof, per sub. (a)(5). And will be submitted forthwith the submitted brief.

The cited statute, 8 U.S.C. § 1433, allows citizen parents to naturalize their children born outside the United States if

---

2. Because Gonzalez–Roque's deportation proceeding at the Ulster facility had concluded, the INS's Eastern Adjudication Center in Bur-

lington was the only office that could properly consider the petition.

they are under eighteen years old and "residing outside of the United States in the legal and physical custody of the citizen parent...." 8 U.S.C. § 1433(a)(4) (2000). This provision was inapplicable to Gonzalez–Roque because, at the time of the deportation proceedings, he was over eighteen years old and resided in the United States. Further, although reference was made to a brief, Gonzalez–Roque did not file any additional documents with the BIA.

In November 1996, the BIA found Gonzalez–Roque's claims to be without merit and dismissed the appeal. In September 1997, Gonzalez–Roque was deported to the Dominican Republic. He returned to the United States at some point prior to January 9, 2000, when he was arrested in New York City for criminal possession of a controlled substance in the seventh degree. In November 2000, he was arrested again in New York City for grand larceny in the third degree, criminal possession of stolen property in the third degree, and criminal possession of a controlled substance in the seventh degree.

On April 10, 2001, Gonzalez–Roque was indicted and charged with illegal reentry following deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). He moved to dismiss the indictment on the grounds that the underlying order of deportation was invalid because he had been deprived of due process during his deportation proceedings. Specifically, he claimed that "[b]oth the [INS's] negligence in being unable to find the I–130 which had properly been sent to the proper address and the IJ's refusal to grant an adjournment to resolve the matter rendered the deportation hearing on July, 5 1995 fundamentally

unfair." [3] The District Court granted the motion and dismissed the indictment. Specifically, the court held that: (1) Gonzalez–Roque had sufficiently exhausted his administrative remedies despite his failure to raise the I–130 issue on appeal; (2) Gonzalez–Roque had been denied the opportunity for judicial review because the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, barred him from seeking direct judicial review of his deportation order; (3) the IJ and INS deprived him of due process at his deportation proceedings; and (4) but for the due process errors, there was a meaningful chance that he would have been granted relief from deportation. *Gonzalez–Roque,* 165 F.Supp.2d at 581–86. The Government now appeals.

## DISCUSSION

■ Because it entails mixed questions of law and fact, we review *de novo* the District Court's dismissal of the indictment. *See United States v. Fernandez–Antonia,* 278 F.3d 150, 156 (2d Cir.2002); *United States v. Alfonso,* 143 F.3d 772, 775 (2d Cir.1998).

## I. Mootness

■ After the District Court dismissed the indictment, Gonzalez–Roque was released into the custody of the INS, which deported him to the Dominican Republic in November 2001, where he purportedly remains. The question arises whether this appeal is therefore moot. We find it is not. Should Gonzalez–Roque reenter the United States, he would be subject to arrest and, if convicted, imprisonment. *See United States v. Villamonte–Marquez,* 462

---

**3.** Gonzalez–Roque's allegations of INS negligence are based on the assumption that the INS had received the I–130 petition before the July 5 hearing. This allegation is questionable, given that the record does not reflect that the petition was received prior to the IJ's decision.

U.S. 579, 581 n. 2, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) (finding no mootness where defendants were deported following dismissal of their indictments, because defendants could "manage to re-enter the country on their own," thereby subjecting themselves "to arrest and imprisonment for [their] convictions"); *United States v. Londono*, 100 F.3d 236, 242 (2d Cir.1996) ("The government might make some effort to retrieve the defendant; alternatively, the defendant, who was in this country illegally, might return.").

## II. Collateral Attacks on Deportation Orders

■ "Although the Supreme Court has not specifically delineated the procedural safeguards to be accorded aliens in deportation or removal hearings, it is well settled that the procedures employed must satisfy due process." *Fernandez–Antonia*, 278 F.3d at 156 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.")). Consequently a defendant may collaterally attack an order of deportation on due process grounds where, as here, the order becomes an element of a criminal offense. *United States v. Mendoza–Lopez*, 481 U.S. 828, 838–39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). To do so successfully, he must satisfy each of the three requirements of 8 U.S.C. § 1326(d), which provides that:

> [A]n alien may not challenge the validity of [a] deportation order ... unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of

the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d) (2000); *see also Mendoza–Lopez*, 481 U.S. at 839 & n. 17, 107 S.Ct. 2148 (holding that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review," but declining "to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review").

## III. Denial of Due Process

■ Gonzalez–Roque alleges that the IJ's failure to grant a fourth adjournment so he could obtain the I–130 petition and the INS's failure to notify him of its receipt of the form deprived him of due process because his "only chance to avoid deportation was to obtain an adjustment of status based on the petition. . . ." Def.'s Br. at 16. The District Court agreed, finding that due process was violated because "the defects in the deportation proceedings made his lawful claim for relief merely illusory." *Gonzalez–Roque*, 165 F.Supp.2d at 585. In support of its conclusion, the court pointed out that Gonzalez–Roque was *pro se* and that the deportation "could not be accomplished for two years" following his deportation hearings. *Id.* at 581.

We differ with the District Court. The IJ granted Gonzalez–Roque three adjournments and he had five months to obtain the I–130, but failed to do so prior to the July 5, 1995 hearing. It was well within the IJ's discretion to deny Gonzalez–Roque's request for a fourth adjournment. *See Arango–Aradondo v. INS*, 13 F.3d 610, 613 (2d Cir.1994) (stating that, in immigration cases, "[w]e will only find an

abuse of discretion where the decision was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis") (citation and internal quotation marks omitted). Assuming it was clear during the deportation proceedings that Gonzalez–Roque could not be deported for two years, that fact did not require a fourth adjournment because an appeal to the BIA, at which he could present the I–130 form, was available. Moreover, no applicable statute, rule, or decision requires adjournments to be granted merely because time remains before deportation, and such a requirement would lead to delay and inefficiency in deportation proceedings.

Gonzalez–Roque also suggests that the INS had the I–130 petition in its possession during the deportation proceedings, but did not disclose that fact. He has not, however, proffered any evidence that would show this to be the case. Moreover, the document at issue came from his own stepfather and could have been proffered to the BIA even after the close of proceedings before the IJ. Consequently, we conclude that Gonzalez–Roque has not established that his deportation proceedings failed to afford him due process of law.[4]

## IV. Administrative Exhaustion

■ Even if Gonzalez–Roque could establish a due process violation, his collateral challenge would fail because he has failed to satisfy the first prong of § 1326(d): exhaustion of his administrative remedies. *See* 8 U.S.C. § 1326(d)(1) (2000). The District Court recognized,

and Gonzalez–Roque concedes, that his appeal to the BIA failed to raise any of the arguments he raised before the District Court and which he presses here. His sole basis for appeal to the BIA was the inapplicable 8 U.S.C. § 1433, which concerns the naturalization of children under the age of eighteen residing outside of the United States. Gonzalez–Roque made no reference to 8 U.S.C. § 1255(a), which governs adjustments of status; nor did he make any claim relating to an I–130 petition or to the IJ's failure to grant a fourth adjournment.

The District Court, while acknowledging that "there are authorities to the effect that the issue to be exhausted must be raised," nevertheless concluded that § 1326(d)(1)'s administrative exhaustion requirement had been satisfied here. *Gonzalez–Roque*, 165 F.Supp.2d at 582–84. The District Court began with the proposition that " '[a]n appeal from an IJ to the BIA, without more, generally suffices to satisfy an exhaustion requirement.' " *Id.* at 582 (quoting *United States v. Johnson*, No. 3:99–CR–139, 2000 WL 620324, at *8 (D.Conn. May 1, 2000)). The court then concluded that, in this case, the BIA should have considered the adjustment of status issue because it "was evident on the record below," because *pro se* litigants deserve special deference, and because Gonzalez–Roque simply "sought to raise the issue as he may have understood it." *Id.* at 583–84. The court also concluded that Gonzalez–Roque was exempted from the exhaustion requirement because he asserted a due process claim that the BIA itself

---

4. In support of his argument, Gonzalez–Roque relies on two habeas cases where appellate courts found constitutional violations arising out of the lower courts' refusal to grant a continuance to ensure the presence of a material witness: *Singleton v. Lefkowitz*, 583 F.2d 618 (2d Cir.1978) (right to compulsory process); *Shirley v. North Carolina*, 528 F.2d 819 (4th Cir.1975) (due process). These cases are inapposite because the absence of the witness was due to significant errors by the prosecution or the state, whereas here Gonzalez–Roque himself failed to obtain the I–130 form by the extended deadline. *See Singleton*, 583 F.2d at 623–26; *Shirley*, 528 F.2d at 822.

could not consider, and because he did not learn that the INS had received his stepfather's I–130 form until well after the BIA had dismissed his appeal. *Id.*

■ We are not persuaded. The fact that a possible adjustment of status had been discussed in the hearings before the IJ does not mean that the issue was also raised on appeal. Although the BIA has access to the entire record, it is not obligated to search it for possibly meritorious appellate issues. *See Lovell v. INS,* 52 F.3d 458, 461 (2d Cir.1995) (stating that the BIA *may* conduct *de novo* review of an IJ's decision) (emphasis added); *Abdulai v. Ashcroft,* 239 F.3d 542, 549 n. 3 (3d Cir.2001) (finding "meritless" the claim that BIA is required to review record *de novo* ). Statutory exhaustion requirements such as that set forth in § 1326(d) are "mandatory, and courts are not free to dispense with them." *Bastek v. Fed. Crop Ins. Corp.,* 145 F.3d 90, 94 (2d Cir.1998). Section 1326(d)(1) placed the responsibility for raising the adjustment of status issue on Gonzalez–Roque, not on the BIA. Significantly, this would not have been a merely formal exercise since Gonzalez–Roque's claims of procedural irregularities are of the sort that are commonly raised before, and explored by, the BIA during the appeals process. More importantly, had the BIA been afforded the opportunity, it could have corrected any prejudicial errors. Permitting § 1326(d)(1)'s exhaustion requirement to be satisfied by mere submission of the administrative record to the BIA is inconsistent with the statute

and, as a practical matter, would eviscerate the requirement.[5]

Moreover, we do not agree that Gonzalez–Roque's *pro se* status required the BIA to search the record *sua sponte* for potentially meritorious claims. As we have already noted, § 1326(d)(1)'s exhaustion requirement is mandatory. In any event, the rationale for the customary judicial deference to *pro se* filings is not present here.[6] Gonzalez–Roque failed to raise before the BIA the very issues-receipt of the I–130 petition and the IJ's refusal to grant a fourth adjournment-that were central to his arguments during his several hearings before the IJ, and which now form the basis for his collateral challenge in federal court. The IJ explicitly told Gonzalez–Roque that "[a]ll you [have] to do is, tell [the BIA] what the Judge did wrong. . . ." Yet his appeal to the BIA omits any mention of the INS's and IJ's alleged misconduct related to the I–130 petition. While we recognize that Gonzalez–Roque labored under the significant handicaps that many *pro se* litigants experience, we are not prepared on this record to excuse his failure to exhaust the administrative remedies required by § 1326(d). *See Arango–Aradondo,* 13 F.3d at 614 (declining to consider issue not raised before BIA).

■ The District Court concluded, in the alternative, that Gonzalez–Roque was exempted from the exhaustion requirement because the BIA cannot adjudicate constitutional issues such as his due process claim. While constitutional claims lie outside the BIA's jurisdiction, it clearly can address procedural defects in deporta-

---

**5.** Gonzalez–Roque also suggests that the INS's receipt of the I–130 petition obligated the BIA to consider the adjustment of status application on its review. This argument ignores that Gonzalez–Roque was required to raise the issue before the BIA.

**6.** This is neither a case where a *pro se* plaintiff failed to properly articulate a claim in a complaint, *see Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996), nor a case where a *pro se* litigant failed to raise an argument below essential to a claim on appeal, *see Corcoran v. N.Y. Power Auth.,* 202 F.3d 530, 537 (2d Cir. 1999).

tion proceedings. The issues raised by Gonzalez–Roque—whether the INS erred in failing to locate the I–130 form and whether the IJ abused his discretion by refusing to adjourn the proceedings to consider it-are essentially procedural. Gonzalez–Roque's claim is that those errors rose to a constitutional level because the IJ's refusal to further adjourn proceedings deprived him of the opportunity to present evidence essential to his adjustment of status application. But Gonzalez–Roque cannot evade BIA review merely by labeling the claim a due process claim. As the Ninth Circuit stated in *Vargas v. U.S. Dept. of Immigration:*

[A] petitioner cannot obtain review of procedural errors in the administrative process that were not raised before the agency merely by alleging that every such error violates due process. "Due process" is not a talismanic term which guarantees review in this court of procedural errors correctable by the administrative tribunal.

831 F.2d at 908 (citation and internal quotation marks omitted). While "the BIA does not have jurisdiction to adjudicate constitutional issues ... procedural errors correctable by the [BIA]" must first be raised with the agency. *Id.* In order to correct these errors, "the BIA can reopen the proceedings and, in appropriate circumstances, allow the petitioner to supplement the record with additional evidence." *Arango–Aradondo,* 13 F.3d at 614. This Court reached a similar conclusion in the context of a constitutional claim for ineffective assistance of counsel. *See id.* ("[T]he exhaustion requirement that applies in immigration proceedings .... re-

quires the petitioner to raise his [ineffective assistance] claim in the first instance with the BIA, since it involves procedural errors correctable by the administrative tribunal.") (citation and internal quotation marks omitted).

Finally, the District Court concluded that the administrative exhaustion requirement was inapplicable to Gonzalez–Roque's allegations of INS negligence because he did not discover that the INS had received his stepfather's I–130 petition until years after the BIA had rendered its decision. On appeal, Gonzalez–Roque extends this reasoning to his objections to the IJ's decision, arguing that knowledge of the I–130 petition's receipt was essential to challenge that decision as an abuse of discretion. Def.'s Br. at 9–10. Specifically, Gonzalez–Roque claims that because the IJ based the denial of his request for an adjournment on the absence of an I–130 petition, "[a]ny effort to raise the adjustment of status before the BIA ... would have been futile" on the facts known to him at the time. *Id.* at 9.

These contentions lack merit. Gonzalez–Roque need not have been aware of the INS's receipt of the I–130 petition to raise his procedural objections before the BIA. His knowledge that his stepfather had mailed the petition to the INS at the Ulster facility was enough.[7] On these facts alone, he could have argued to the BIA that the INS was negligent for failing to locate the petition and that the IJ should have allowed its submission (or at least submission of the copy). Gonzalez–Roque could have requested that the BIA consider the petition in determining

7. Gonzalez–Roque argues that he "reasonably could have concluded his information was incorrect and that his stepfather had failed to send in the form." Def.'s Br. at 11. If true, this belief would not excuse him from raising the adjustment of status issue before the BIA; rather, it would merely reflect his conscious decision not to do so. As the Government points out, Gonzalez–Roque could have asked his stepfather to send in another form or forwarded his own copy to the BIA. Pl.'s Reply Br. at 6.

whether he was eligible for an adjustment of status, or that the agency remand to the IJ with directions to consider the petition. He did neither.[8]

At most, knowledge of the INS's receipt of the I–130 petition would have strengthened Gonzalez–Roque's procedural objections and formed the basis for a motion to reopen proceedings before the IJ. But he cannot reasonably argue that the absence of such knowledge prevented him from asserting these objections before the BIA on appeal. Accordingly, he forfeited his due process arguments by failing to raise them before the BIA.

## V. Deprivation of Judicial Review

■ Even if we were to conclude that Gonzalez–Roque's other arguments were meritorious, his collateral challenge would still fail because he has not shown, as the second prong of § 1326(d) requires, that his deportation proceedings improperly deprived him of the opportunity for judicial review. *See* 8 U.S.C. § 1326(d)(2) (2000).

The District Court concluded that Gonzalez–Roque was improperly deprived of judicial review because the INA, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104 208, 110 Stat. 3009 (Sept. 30, 1996), precludes appeals by deportable aliens who have been convicted of aggravated felonies.[9] The court stated that "[a]s a result of Congress' limitation of his right to appeal, no judge has reviewed Gonzalez–Roque's claim. . . ." *Gonzalez–Roque,* 165 F.Supp.2d at 584. IIRIRA's elimination of direct judicial review for aliens convicted of aggravated felonies has been viewed as problematic given "the need for some judicial review of aliens' constitutional challenges." *Jean–Baptiste v. Reno,* 144 F.3d 212, 219 (2d Cir.1998); *see INS v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (noting the "strong presumption in favor of judicial review of administrative action"). Notwithstanding IIRIRA's preclusion of direct appeals, however, habeas review of BIA decisions remains available under 28 U.S.C. § 2241.

---

**8.** The principal case upon which the District Court and Gonzalez–Roque rely, *Sewak v. INS,* 900 F.2d 667 (3d Cir.1990), is distinguishable. In *Sewak,* the plaintiff was completely excluded from his deportation proceedings, and only learned of them shortly before his time to appeal to the BIA had expired. He claimed that his due process rights had been violated by this failure to receive notice of the proceedings. *Id.* at 668. The Third Circuit found that the plaintiff need not have moved to reopen before the immigration judge; rather, he sufficiently exhausted his administrative remedies as to his due process claim merely by filing the appeal. *Id.* at 671. The court recognized that "[t]o hold otherwise would deprive [the plaintiff] of a remedy he did not pursue because the due process violation he asserts left him unaware of the circumstances that made it available." *Id.* Here, Gonzalez–Roque was actively involved in his deportation hearings and was aware of the basis for his procedural objec-

tions; he simply failed to raise the critical issues before the BIA.

**9.** Because Gonzalez–Roque's deportation proceedings commenced prior to April 1, 1997 and became administratively final after October 30, 1996, his case was governed by the transitional provisions of IIRIRA. *See Henderson v. INS,* 157 F.3d 106, 117 (2d Cir.1998). The pertinent provision stated that "[t]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in [certain sections of the code]," which included any aggravated felony. IIRIRA § 309(c)(4)(G). This rule has been replaced by a similar provision in the revised INA. *See* 8 U.S.C. § 1252(a)(2)(C) (2000) (stating that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [certain sections] of this title").

"[T]he availability of habeas to challenge deportation orders has long been recognized." *Jean–Baptiste,* 144 F.3d at 218 (citing *Heikkila v. Barber,* 345 U.S. 229, 234–35, 73 S.Ct. 603, 97 L.Ed. 972 (1953)). The District Court determined that, following IIRIRA, habeas was not available to Gonzalez–Roque because "the right to seek collateral review [of deportation orders] through a writ of habeas corpus was not well-established, and opposed by the government." *Gonzalez–Roque,* 165 F.Supp.2d at 584. It pointed out that the availability of such relief was not finally settled by the Supreme Court until last year. *Id.* (citing *Calcano–Martinez v. INS,* 533 U.S. 348, 351, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001) (holding that jurisdiction-stripping provisions of IIRIRA did not preclude aliens convicted of aggravated felonies from pursuing habeas relief pursuant to 28 U.S.C. § 2241); *St. Cyr,* 533 U.S. at 298–314, 121 S.Ct. 2271 (same)).

Admittedly, at the time Gonzalez–Roque's final deportation order was entered, neither this Court nor the Supreme Court had yet held that such habeas petitions were proper after the passage of IIRIRA. But this does not mean that the remedy was unavailable. The Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it," U.S. Const., art. I, § 9, cl. 2. Also, as this Court has previously stated, nothing in the text of IIRIRA suggests that Congress repealed § 2241 or limited its scope. *Jean–Baptiste,* 144 F.3d at 219. Moreover, in the period between the BIA's decision and Gonzalez–Roque's deportation, habeas petitions were successfully litigated in this circuit by deportable criminal aliens who, like Gonzalez–Roque, could not resort to direct judicial review. *See, e.g., Mojica v. Reno,* 970 F.Supp. 130, 140–42, 160–63 (E.D.N.Y.1997) (petitions filed March and April 1997), *aff'd in part, dismissed in part sub nom. Henderson v. INS,* 157 F.3d 106 (2d Cir.1998); *Yesil v. Reno,* 958 F.Supp. 828, 834, 836 (S.D.N.Y.1997) (petition filed November 1996), *aff'd in part, dismissed in part,* 157 F.3d 106 (2d Cir. 1998); *cf. Eltayeb v. Ingham,* 950 F.Supp. 95, 99 (S.D.N.Y.1997) (following other district courts in concluding that habeas review continued to be available following IIRIRA).[10] Gonzalez–Roque has thus failed to show that he was improperly denied the opportunity for judicial review.

## CONCLUSION

For the foregoing reasons, we conclude that Gonzalez–Roque's collateral challenge to his deportation order is insufficient as a matter of law. The judgment of the District Court is reversed and the case is remanded for reinstatement of the indictment.

---

**10.** Gonzalez–Roque contends that even if available, habeas relief would have been futile because the INS failed to inform him of its receipt of his stepfather's I–130 petition. As noted above in our discussion of administrative exhaustion, Gonzalez–Roque need not have been aware of the INS's receipt of the petition to assert his due process claim.