**UNITED STATES of America,**

v.

**Segundo De Jesus PEREZ Defendant**

**No. 01–CR–1377 (JBW).**

United States District Court,
E.D. New York.

July 25, 2002.

**230**

Catherine Wen Hwa So, U.S. Attorney's Office, E.D.N.Y., Brooklyn, NY, for Plaintiff.

Jan A. Rostal, The Legal Aid Society Federal Defender Division, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

Defendant, charged with criminal reentry into this country after deportation, moves to dismiss the indictment on the collateral ground that ineptness of his attorney during deportation proceedings had resulted in violation of his right to due process, negating the predicate for the prosecution. The claim is troubling. It illustrates why aliens are often afforded the form of due process without its substance. The motion is granted.

### I Facts

Mr. Perez is a citizen of the Dominican Republic. He became a permanent resident of the United States in 1986 and lived in New York City with his wife and daughter.

In April 1993 Mr. Perez was convicted of the attempted criminal sale of a controlled substance and sentenced to six months incarceration and five years probation. He apparently had pleaded guilty. Defendant's Criminal History, attached as Exhibit A to Government's Response in Opposition to Defendant's Motion to Dismiss Indictment (Apr. 25, 2002) ("Government's Response").

On August 2, 1993, while serving his sentence at Riker's Island, Mr. Perez was given an Order to Show Cause and Notice of Hearing by the Immigration and Naturalization Service ("INS") indicating that the INS would seek to have him deported as an aggravated felon. Order to Show Cause and Notice of Hearing, attached as

Exhibit B to Government's Response. The notice included a form informing Mr. Perez in English and Spanish that "[i]f you are not satisfied with the decision of the immigration judge, you have the right to appeal. The immigration judge will provide you with your appeal rights." *Id.*

After his release from Riker's Island, Mr. Perez was transferred to an INS facility at Oakdale, Louisiana and his case was assigned to an Immigration Judge. His application for a change of venue to New York, his and his family's place of domicile, made through his attorney, John J. Garzon, an attorney practicing in New York, was denied. A deportation hearing was conducted in Louisiana on October 5, 1993. At this hearing, the Immigration Judge found Mr. Perez to be deportable. His attorney indicated an intention to make a "212(c) application." Transcript of Hearing held on October 5, 1993, attached as Exhibit D to Government's Response. By a 212(c) application, Mr. Garzon presumably meant that he would seek a discretionary waiver of deportation under then-section 212(c) of the Immigration and Naturalization Act. 8 U.S.C. § 1182(c) (1994) (repealed by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. 104–208, 110 Stat. 3009, § 304(B) (1996)).

The Immigration Judge ordered that Mr. Garzon file any 212(c) application by October 19, 1993 and that he personally appear at a hearing in Louisiana on the application on November 1, 1993. On October 18, 1993, Mr. Garzon informed the clerk of the immigration court that he intended to submit a motion for continuance. Nevertheless, no 212(c) application or motion for a continuance had been filed on Mr. Perez's behalf by October 19. On October 20 the Immigration Judge found that because an application had not been timely filed Mr. Perez had "abandoned any and all claims for relief from deportation."

Order of Deportation, attached as Exhibit D to Memorandum in Law in Support of Defendant's Motion to Dismiss Indictment (April 10, 2002) ("Defendant's Memorandum"). The Immigration Judge then ordered Mr. Perez deported. *Id.*

On October 28, Mr. Garzon filed a motion on behalf of Mr. Perez to reopen the deportation proceedings. Along with this motion, Mr. Garzon attached a motion for a continuance dated October 27, 1993, as well as an "Application for Advance Permission to Return to Unrelinquished Domicile" dated October 19, 1993. Motion to Reopen Deportation Proceedings, attached as Exhibit E to Defendant's Memorandum. These papers did not include a motion to stay the deportation order. A stay would have allowed Mr. Perez to remain in the United States while he appealed from his order of deportation.

On November 9, 1993, the Immigration Judge denied the motion to reopen the deportation proceedings on the ground that the defendant had not shown good cause for failure to file the 212(c) application by October 19, 1993. Mr. Perez was deported shortly after his motion to reopen was denied.

On November 9, 1993, the same day that the Immigration Judge denied reopening, but before actual deportation, Mr. Garzon filed a notice of appeal to the Board of Immigration Appeals appealing the Immigration Judge's denial of the motion to reopen. Notice of Appeal to the Board of Immigration Appeals of Decision of Immigration Judge, attached as Exhibit G to Government's Response. A memorandum in support of the appeal was filed the following day by Mr. Garzon. Memorandum in Support of Appeal, attached as Exhibit G to Government's Response. On December 7, 1993, after actual deportation, the Board of Immigration Appeals affirmed the decision of the Immigration

Judge denying the motion to reopen the proceedings. *Board of Immigration Appeals* decision, attached as Exhibit H to Government's Response.

Eight years later, on November 24, 2001, Mr. Perez arrived at John F. Kennedy International Airport on a flight from the Dominican Republic. Immigration and Naturalization Services agents stopped him. A records check revealed his criminal conviction and deportation. Mr. Perez was indicted on a charge of illegal reentry on December 11, 2001.

## II  Law

Section 1326(b)(2) of Title 8 of the United States Code makes it a crime for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony" to reenter the United States. As defined at the time of deportation an aggravated felony included "illicit trafficking in a controlled substance ... including a drug trafficking crime." 8 U.S.C. § 1101(a)(43)(B) (1994). The defendant met the definition of an aggravated felon.

Put aside is the question— not raised by the parties on this motion— of whether a person has "entered the United States" if he is stopped at the border. ■ One element that the government must prove to sustain its charge is that the alien was properly deported. In *United States v. Mendoza–Lopez*, 481 U.S. 828, 837, 107 S.Ct. 2148, 2154–55, 95 L.Ed.2d 772, 782 (1987), the Supreme Court held that the Due Process Clause places limits on the use of prior deportations in criminal charges. The Court outlined requirements for a successful collateral challenge. *Id.* at 836–39, 107 S.Ct. 2148. Congress codified these requirements as: (1) the alien must have exhausted all administrative remedies; (2) the deportation proceedings must have improperly denied the alien of the opportunity for judicial review; and (3) the entry of

the order was fundamentally unfair. 8 U.S.C. § 1326(d). In proving fundamental unfairness an alien attempting to make a collateral attack on a prior deportation order must prove that prejudice resulted from any fundamental procedural errors.

■ To exhaust administrative remedies, an alien is generally required to appeal from an Immigration Judge's order to the Board of Immigration Appeals. *United States v. Johnson*, 2000 WL 620324, at *8 (D.Conn.2000), citing *Mejia–Ruiz v. INS*, 51 F.3d 358, 364 (2d Cir.1995). The defendant appealed the denial of the motion to reopen to the Board of Immigration Appeals. The deportation order itself was never appealed. The defendant was deported while the appeal was pending.

■ The meaningful review requirement mandates that an alien at risk of being deported be provided with written notice of the right to appeal. *United States v. Fares*, 978 F.2d 52, 56 (2d Cir. 1992), citing 8 C.F.R. § 242.1(c). Due Process is violated when the proceedings "effectively deprived" the alien of the right to a direct administrative appeal of the decision of the Immigration Judge. *United States v. Paredes–Batista*, 140 F.3d 367, 377 (2d Cir.1998). Situations in which courts have found a deprivation of the opportunity for review include an unconsidered and unintelligent waiver of appeal, *Mendoza–Lopez*, 481 U.S. at 840, 107 S.Ct. 2148; failure to advise of the availability of discretionary relief, *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir.2000); *United States v. Aguirre–Tello*, 181 F.Supp.2d 1298, 1303–1304 (D.N.M.2002); inadequate explanation of a section 212(c) hearing and such a hearing's accompanying rights, *United States v. Sanchez–Peralta*, 1998 WL 63405, at *5 (S.D.N.Y. Feb. 13, 1998); and failure to inform the alien of the time and date of a hearing, *United States v. Montano–Bentancourt*, 151

F.Supp.2d 794, 796–97 (W.D.Tex.2001). *Cf. United States v. Gonzalez–Roque,* 165 F.Supp.2d 577, 581 (S.D.N.Y.2001) (alien deprived of due process when he was not informed that an INS attorney had received his 212(c) application, thus frustrating review).

▇ Deprivation of judicial review can also be established by demonstrating ineffective assistance of counsel. To prove ineffectiveness of the attorney a party must show that "counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." *Saleh v. United States Dep't of Justice,* 962 F.2d 234, 241 (2d Cir.1992) (internal quotes and citations omitted). The party "must allege sufficient facts to allow this court to infer that competent counsel would have acted otherwise and must also show that he was prejudiced by his counsel's performance." *Esposito v. INS,* 987 F.2d 108, 111 (2d Cir. 1993) (per curiam) (internal quotes and citations omitted).

▇ Ineffective assistance of counsel is demonstrated when: an attorney does not file a 212(c) application if a competent attorney would have filed such a motion; there is a prima facie showing of eligibility for relief; and the attorney fails to inform the client that such an application would not be filed—— thus in effect abandoning the client. *Rabiu v. INS,* 41 F.3d 879 (2d Cir.1994). *Rabiu* involved a direct, not collateral, attack.

One case distinguished *Rabiu* from cases in which collateral challenges are mounted. *United States v. Crown,* 2000 WL 364890, at *7, (S.D.N.Y. Apr. 10, 2000), *aff'd, United States v. Crown,* 2001 WL 682289, 12 Fed.Appx. 59 (2d Cir.2001). The *Crown* court emphasized that the relief sought in *Rabiu* was a remand to an Immigration Judge to allow the filing of a section 212(c) application, whereas the re-lief sought by a collateral challenge is the broad and conclusive act of dismissal of a criminal complaint.

*Crown* is distinguishable from the present case. The alien in *Crown* actually received a section 212(c) hearing. His application was denied and his attorney filed a notice of appeal but never filed a brief in support of the appeal, resulting in dismissal of the appeal. *Crown* at *8, 12 Fed. Appx. 59. Mr. Crown claimed that his counsel was ineffective because of inadequate preparation of witnesses for the section 212(c) hearing, failure to show Mr. Crown's HIV infection at the hearing, and failure to file a brief in support of the appeal. *Id.* at *15, 12 Fed.Appx. 59. The district court ultimately concluded that "[t]he fact that defendant was merely 'eligible' for Section 212(c) relief and was denied it after a hearing, standing alone, is insufficient to find that he was deprived of his right to judicial review warranting dismissal of the exclusion order." *Id.* at *20, 12 Fed.Appx. 59. The attorney in *Crown* arguably went further than the attorney in the instant case in protecting the alien, his client. Nevertheless, *Crown* suggests that ineffective assistance of counsel is harder to establish if the alien moves to collaterally, rather than directly, challenge the validity of a deportation order. *Id.* at *19–20, 12 Fed.Appx. 59.

▇ Both in a direct and collateral attack a party must prove that prejudice resulted from the deprivation of judicial review. *Fares,* 978 F.2d at 57 (collateral attack); *Rabiu,* 41 F.3d at 882–83 (direct attack). The *Rabiu* court required an indication that a prima facie showing could have been made on the alien's behalf at the 212(c) hearing. 41 F.3d at 882–83, citing *Miranda–Lores v. INS,* 17 F.3d 84, 85 (5th Cir.1994). To demonstrate prejudice, "an alien must show that his proceeding contained errors so fundamental that he might

have been deported in error .... The alien needs to prove that he might not have been deported had he been able to exercise his right of direct appeal; he must make some showing that the result might have been different." *United States v. Fernandez–Antonia*, 278 F.3d 150, 159 (2d Cir. 2002). *Fernandez–Antonia* was a case involving a collateral attack. *Id.* at 157. The *Fernandez–Antonia* standard of "some showing that the result might have been different" applies to the present case.

■ In determining whether to grant a section 212(c) application, an Immigration Judge will "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." *Matter of Marin*, 1978 WL 36472, 16 I. & N. Dec. 581, 584 (BIA 1978). The administrative judge will consider positive factors such as family ties within the United States, length of residence in the United States, evidence of hardship to the alien and the alien's family in the event of deportation, employment history, property or business ties, evidence of good character, and likelihood of positive contributions to American society. *Lovell v. INS*, 52 F.3d 458, 461 (2d Cir.1995). Adverse factors that will be considered include the nature and circumstances of the cause for deportation; additional immigration law violations; the existence, recency, seriousness, and nature of a criminal record; and other indications of an alien's bad character or undesirability as a permanent resident. *Lovell*, 52 F.3d at 461, citing *Marin*, 1978 WL 36472, 16 I. & N. Dec. at 584–85. More than half of 212(c) applications have been approved. *INS v. St. Cyr*, 533 U.S. 289, 296 n. 5, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

### III  Application of Law to Facts

■ The defendant was effectively deprived of the opportunity for administra-

tive review because of failures, not of the government, but of his counsel. He was notified, in writing, of the right to review. The expressed intention of counsel to file a section 212(c) application on the behalf of the defendant implies that the defendant through his counsel was aware of the availability of discretionary relief. The setting by the Immigration Judge of a filing deadline for a section 212(c) application and the requirement that counsel appear was reasonable and clear; the attorney acknowledged receiving the time requirement. Ex. D to Government's Response. Counsel indicated that he understood that the defendant could be deported if the application for section 212(c) relief was not filed by October 19, and that he was required to personally appear at the hearing scheduled for November 1. Based on the factors considered by the Immigration judge, listed in *Lovell*, *supra*, there was a substantial probability that a properly prosecuted section 212(c) application would have been successful.

The defendant can be characterized as a victim of ineffective assistance of counsel. This is not a case like *Rabiu* where the attorney effectively stopped representing the client. In the present case, after counsel failed to timely file the section 212(c) application he had failed his client. His subsequent move to reopen the proceedings and file an appeal with the Board of Immigration Appeals was nugatory. Counsel had failed to take the most elementary step to protect the client— in practical effect an abandonment.

A competent attorney would not have allowed the initial filing deadline to pass, even though, in an attempt at repair, such an attorney would have behaved similarly to Mr. Garzon once the mistake had been made. If the motion to reopen had been granted, counsel could (and likely would) have filed a section 212(c) application on

defendant's behalf with a prima facie basis for success.

Even though the defendant was denied the opportunity for judicial review of a section 212(c) application or any other issue in his deportation proceedings, he was not altogether denied the "opportunity" for judicial review. He was never literally abandoned by his attorney. The motion to reopen was considered by the Immigration Judge and ultimately appealed to the Board of Immigration Appeals.

The case is at the borderline of a due process violation. Yet, ultimately, the court is driven to the conclusion that, in the language of the *Saleh* case, "counsel's performance was so ineffective as to have impinged upon...fundamental fairness." Defendant's counsel deprived the defendant of the opportunity for judicial review, negating a fundamentally fair proceeding. Defendant's collateral challenge meets the requirements of section 1362(d). Exhaustion requirements have been met because an appeal was blocked by the attorney's lack of skill and attention to his professional obligations.

In a case at the verge of fundamental unfairness, which could lead to a serious criminal prosecution and a long prison term, due process should be interpreted generously to protect the accused. An alien is not entitled to any less due process protection than a citizen especially in a proceeding so important as one which could lead to the devastating punishment to himself and his family of separation from home and loved ones by deportation.

## IV  Continuing Concern about Lack of Due Process Because of Poor Lawyering

The court is troubled by the carelessness or lack of skill of defendant's counsel. Over the years it has observed a wide variability in professional capacity in legal representatives of aliens. Improving the level of representation by granting collateral attacks long after the event will do little to improve the quality and practice of the immigration and naturalization bar. Undoubtedly part of the problem is not the fault of attorneys, but of the realistic situation that the aliens involved often possess little money, lack language skills, and a have fear of the government that inhibits a rational defense. Aliens and their families often wait too long before obtaining counsel. Their lack of sophistication places them at the mercy of sometimes venal and unskilled non-legal advisors. Transfer of the alien to a distant venue vastly complicates counsel's problems.

Currently, to practice immigration and naturalization law, all that an attorney is required to do is file "a written declaration that he or she is currently qualified and is authorized to represent the party for whom he or she appears.... Any attorney in good standing may represent persons before the [Immigration and Naturalization] Service, the immigration judges or Board [of Immigration Appeals]." 1 Charles Gordon, Stanley Mailman, and Stephen Yale–Loehr, *Immigration Law and Procedure* § 4.02(1)(b) (revised ed.2002). A more effective approach to fair process may well be to require special training and examinations leading to admission to an immigration and naturalization bar for those who wish to exercise this specialty. Poor representation could then lead to disbarment. In some instances the use of modern techniques such as two-way television may reduce the venue problem.

Immigration and naturalization law has grown exceedingly complex in recent years as Congress tighten's the law against aliens. The court of appeals for this circuit has characterized the immigration statutes as "a baffling skein of provisions for the I.N.S. and courts to disentangle," akin to "King Minos's labyrinth in ancient

Crete." *Lok v. INS*, 548 F.2d 37, 38 (2d Cir.1977). Intricacy is bound to increase post-September 11, 2001. The immigration and naturalization bar— as well as the courts and administrative agents— must be prepared to rise to increased challenges to its skills and bona fides if we are to ensure real due process to aliens.

## V Conclusion

A more attentive attorney would have had a good probability of saving the defendant from deportation by taking the most elementary steps to protect him. The strong policy in favor of finality cannot support denial of this collateral attack. Even though mens rea existed when the defendant attempted entry knowing he had been deported, an improper criminal prosecution cannot be countenanced.

The motion to dismiss is granted.

SO ORDERED.