**UNITED STATES of America**

v.

**Rogelio FIGUEROA–TAVERAS,**
**Defendant.**

**No. 02 CR. 333(RPP).**

United States District Court,
S.D. New York.

Oct. 22, 2002.

Virginia L. Chavez, Assist. U.S. Atty.,
U. S Atty. Office, Criminal Div., New York
City, for U.S.

**OPINION AND ORDER**

ROBERT P. PATTERSON, JR.,
District Judge.

Defendant Rogelio Figueroa–Taveras
("Defendant") moves to dismiss the Gov-

ernment's indictment charging Defendant
with illegal reentry in violation of 8 U.S.C.
§ § 1326(a) and (b)(2), on the basis that
Defendant's prior deportation was unlaw-
ful. For the following reasons, Defen-
dant's motion is granted.

*Background*

Defendant, a citizen of the Dominican
Republic, arrived in the United States to
live in New York City as a legal immigrant
on October 2, 1966 when Defendant was
four years old. (Declaration of Steven M.
Statsinger, dated July 17, 2002, ¶ 5.) On
February 24, 1997, while Defendant was
serving a sentence of three and a half to
seven years for attempted possession of a
controlled substance, the Immigration and
Naturalization Service ("INS") issued an
order to show cause alleging that Defen-
dant was deportable on the basis of his
conviction in November 1983 for criminal
sale of a controlled substance in New York
Supreme Court and sentence to a term of
six months imprisonment and four and a
half years of probation.[1] (Government's
Brief in Opposition to Defendant's Motion
for Dismissal of the Indictment, Ex. 1.)
The deportation hearing commenced on
May 8, 1997. (Statsinger Decl. ¶ 8.) Immi-
gration Judge Mitchell Levinsky advised
Defendant of his rights to appeal and to
counsel at his own expense, and then
granted an adjournment to July 7, 1997 to
give Defendant an opportunity to retain
counsel. (*Id.*) On July 7, 1997, Defendant
proceeded *pro se* before Judge Levinsky,

---

1. In June 1987, Defendant, after conviction of
criminal sale of a controlled substance in the
fifth degree in New York Supreme Court, was
sentenced to a term of imprisonment of two
to four years. (Government's Brief in Opposi-
tion to Defendant's Motion for Dismissal of
the Indictment, Ex. 2.) In July 1990, Defen-
dant was convicted of attempted burglary in
the second degree in New York Supreme
Court and was sentenced to a term of impris-
onment of two to four years. (*Id.* Ex. 3.) In
January 1996, Defendant was convicted of
attempted criminal possession of a controlled

substance in the third degree in New York
Supreme Court and was sentenced to a term
of imprisonment of three and a half to seven
years, and suspension of his driver's license
for six months. (*Id.* Ex. 4.) In addition to
these felony convictions, Defendant has been
convicted of three misdemeanors: possession
of stolen property on or about September 24,
1982; shoplifting on or about February 9,
1995; and criminal possession of a controlled
substance in the seventh degree or our about
January 4, 2002. (*Id.* at 1, n. 1.)

and Defendant stated that he wished to seek a waiver of deportation based on § 212(c).[2] (*Id.* ¶¶ 9–10; Ex. B.) Judge Levinsky advised Defendant that he was ineligible for § 212(c) relief due to its repeal by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") but further advised that the law could potentially change in the future to permit such relief to Defendant. (*Id.* ¶¶ 11–12; Ex. B.) According to the Transcript of the Deportation Hearing, Judge Levinsky explained that in the event that he decided to deport Defendant, Defendant could appeal that decision and possibly exercise his right to § 212(c) relief should the law change to permit such relief. (Statsinger Decl. Ex. B; Tr. at 4–5.) However, Judge Levinsky also told Defendant he was only eligible for early release from prison if he waived his right to appeal and accepted a decision as final, and specifically stated that Defendant could not "apply for early release if [he was] appealing." (*Id.*; Tr. at 5.) Following the admission of Defendant's 1983 conviction into evidence, Judge Levinsky ordered Defendant to be deported to the Dominican Republic, and then offered Defendant the choices of accepting the deportation or appealing the decision. (*Id.* ¶¶ 14–15.) It is Defendant's position that he waived his right to appeal and accepted the order of deportation based on Judge Levinsky's advice that his waiver of appeal was necessary to obtain early release from his sentence. (*Id.* ¶ 16.) Defendant's position is that, had Defendant been advised that he could appeal his deportation and apply for early release, he would not have waived his appeal. (*Id.*)

Defendant was deported on August 22, 1999, after serving his minimum term of imprisonment of three and a half years in connection with his 1996 conviction for attempted criminal possession of a controlled substance in the third degree. (Gov. Opp. at 2.) At the time of the deportation hearing, Defendant had resided in the United States as a lawful permanent resident for 31 years, and had no family or ties of any kind to the Dominican Republic. (Statsinger Decl. ¶¶ 18–19.) The majority of Defendant's close family relatives lived near to him in New York City.[3] (*Id.* ¶ 20.) Defendant also had a history of employment from 1979 to 1996 during the periods he was not in prison.[4] (*Id.* ¶¶ 24–25.)

---

2. In 1996, § 212(c) of the Immigration and Nationality Act of 1952 (codified as 8 U.S.C. § 1182(c)) was repealed by § 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act. In *INS v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that § 212(c) relief remained available for aliens who would have been eligible for such relief at the time of their pleas under the law then in effect.

3. Defendant was raised in New York City by his maternal grandparents and has many relatives who reside in the New York area including his mother, father, maternal and paternal grandparents, six aunts, one uncle, four siblings, nieces, nephews and cousins. (Statsinger Decl. ¶ 20.) Furthermore, at the time of his deportation, Defendant had been in a common law relationship with Ms. Daisy Ortiz for 22 years, and together they had three children and three grandchildren. (*Id.* ¶ 21.) Prior to his incarceration, Defendant was primarily responsible for supporting Ms. Ortiz and their children, and was responsible for taking care of his maternal grandmother by giving her daily insulin injections, running her errands, and maintaining her home. (*Id.* ¶ 23.) Defendant's grandmother passed away in March 2001. (*Id.*)

4. Defendant's job history includes the following: warehouseman at a printing plant in New Jersey in 1979; grocery store employee in Brooklyn for over four years starting in 1979; grocery store employee in Manhattan from 1984 until 1986; a doorman in a residential building in Manhattan from 1986 until 1987; worker at various garment factories for one year in New York City; contractor from 1990 through 1992 in New York; construction worker in Washington, D.C. for one year starting in 1993; construction worker from

Subsequent to his deportation, Defendant re-entered the United States without first obtaining express consent from the Attorney General. (Gov. Opp. at 2.) His re-entry was discovered when he was arrested on or about January 4, 2002 by the New York Police Department in the Southern District of New York, and was ultimately convicted of criminal possession of a controlled substance in the seventh degree in Criminal Court, Bronx County. (Gov. Opp. at 2–3.) On or about March 26, 2002, Defendant was indicted in the present case on one count of illegal reentry after removal subsequent to conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). (Gov. Opp. at 3.)

Defendant's motion to dismiss is a collateral challenge to the legality of his original deportation arguing that a) Immigration Judge Levinsky improperly caused Defendant to lose his right to request § 212(c) relief from deportation by advising Defendant that Defendant was ineligible to pursue such relief following the 1996 change in law; b) Judge Levinsky incorrectly advised Defendant, acting *pro se*, that if he appealed the order of deportation, he would be ineligible for New York's state program granting aliens in prison early release for deportation; c) Defendant relied on Judge Levinsky's invalid advice and decided to forgo his appeal and any § 212(c) relief in order to be eligible for early release; and d) pursuant to a subsequent Supreme Court decision, Judge Levinsky's interpretation of the 1996 change in law was incorrect in that Defendant would have been eligible for a § 212(c) relief

1994 through 1996 in New York. (Statsinger Decl. ¶¶ 24–25.)

**5.** The government acknowledges that, with respect to convictions prior to the 1996 amendment, the Supreme Court later deter-

from deportation and would have received it.

### Discussion

**A. The Standards Applicable For Collateral Attack**

■ 8 U.S.C. § 1326(d) defines the limitations on a collateral attack on a deportation order, and states in relevant part:

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The Government contends that at the deportation hearing, Defendant did not exhaust the administrative remedies that were available to him. Relying on the transcript of the July 7, 1997 deportation hearing, the Government contends that Defendant was clearly informed that he had a right to appeal,; that if Defendant appealed, he would preserve the possibility of seeking a § 212(c) waiver in the event that the law changed; that failure to appeal would render the deportation order final; and that Defendant knowingly waived his right to appeal.[5] Defendant argues that his waiver of his appeal was not "considered and intelligent" because it was informed by the misinforma-

mined that § 212(c) protections would continue to be available to those aliens convicted of aggravated felonies prior to the 1996 amendment in the law. *See INS v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

tion from Judge Levinsky that Defendant would not be eligible for early release from prison if he exercised that right to appeal.

█ "Though an alien may waive his right to appeal, any such waiver must be considered and intelligent." *United States v. Fares*, 978 F.2d 52, 56 (2d Cir.1992). An effective waiver is the "intentional relinquishment or abandonment of a known right or privilege" with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Sanchez–Peralta*, 1998 WL 63405, *8 (S.D.N.Y. 1998) (citations omitted). In Defendant's case, pendency of immigration proceedings would have prevented his early release from prison. Judge Levinsky's July 7, 1997 deportation order was issued, however, two years before Defendant was eligible for early release from prison, more than enough time to have the appeal decided. By misinforming Defendant that his choice to exercise his right to appeal the deportation order would prevent his enjoyment of the benefit of eligibility for early release, Judge Levinsky effectively dissuaded the *pro se* Defendant from exhausting his administrative remedies and exercising his opportunity for judicial review. *United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ("[A] collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review.").

Defendant has shown that the first two elements satisfying 1326(d) have been met. With respect to the third element, fundamental unfairness, precedents show that Defendant must show that he was somehow prejudiced by deprivation of judicial review and inability to exhaust administrative remedies. *See Sanchez–Peralta*, 1998 WL 63405 at *2, *12 (the test to determine prejudice is whether there was a " 'reasonable likelihood' that he would have avoided deportation had he been afforded judicial review"). *See also, Fares*, 978 F.2d at 57 ("[I]f an alien has been effectively denied his right of direct appeal from the deportation order, we should examine the underlying proceedings to determine whether or not he was unfairly prejudiced by those proceedings."); *United States v. Fernandez–Antonia*, 278 F.3d 150, 159–60 (2d Cir. 2002) (court stated that an alien must show that, absent the procedural errors, he would not have been removed; court declined to state the quantum of proof necessary for an alien to succeed in his demonstration of prejudice, but noted that the formulation of other courts includes "reasonable likelihood" and "plausible showing"); *United States v. Corona–Roman*, 2001 WL 863421, *3 (S.D.N.Y.2001) (an alien Defendant is required to show that "absent the deprivation of rights of which he complains, he would have been likely to win relief from deportation"). Accordingly, Defendant has the burden of demonstrating that he was prejudiced by the misinformation given to him by Judge Levinsky. *See Sanchez–Peralta*, 1998 WL 63405 at *2.

The Government contends that Defendant cannot show prejudice because 1) Defendant was statutorily ineligible to apply for § 212(c) relief because he had previously served an aggregate of more than five years in prison in connection with various aggravated felony convictions; and 2) even if Defendant were eligible to apply for a waiver, Defendant cannot show a likelihood of success on the merits given his history of felony convictions. Defendant denies that he was statutorily ineligible to such § 212(c) relief and claims he would have had a likelihood of success in such an application.

## B. Statutory Construction of § 8 U.S.C. 1182(c)

Prior to 1991, § 212(c) relief was not available to "an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (1990). The Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA") amended 8 U.S.C. § 212(c) so that "an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years" is ineligible for relief from deportation. 8 U.S.C. § 1182(c) (1991).

The plain language of MTINA is ambiguous. As advocated by the Government, the language referring to the conviction of one or more aggravated felonies and the service of a term of at least five years in prison for such felonies was intended by Congress to preclude § 212(c) relief for any alien who has served an aggregated total of at least five years in prison for various aggravated felonies throughout the course of his life, regardless of whether the distinct terms of imprisonment were interrupted by periods of freedom. Alternatively, as advocated by Defendant, the language was intended by Congress to preclude § 212(c) relief only to those aliens who served a single term of imprisonment of five years or more based on convictions of one or more than one aggravated felony. Both parties agree that legislative history revealing Congressional intent is silent on this specific issue. In the event that there is some doubt as to the proper construction of an immigration deportation statute, even when a punitive section is being construed, "the statute should be resolved in favor of the alien … because deportation is a drastic measure and at times the equivalent of banishment or exile" *INS v. Errico*, 385 U.S. 214, 225, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966) (internal quotations and citation omitted).

In this case, Defendant had not served a single term of imprisonment for at least five years. Rather, over the span of ten years, Defendant served various terms of imprisonment totaling more than five years. The plain language of the MTINA, while ambiguous, is more conducive to the statutory interpretation advocated by Defendant. The word "term" rather than "terms" employed by Congress suggests that a single sentence of at least five years is required to prevent § 212(c) relief, and that the aggregation of multiple terms of imprisonment was not intended to exclude relief. The technical amendment could have been enacted to address the ambiguity in pre–1991 § 212(c), which did not link the term of five years imprisonment to Defendant's conviction for an aggravated felony. In the absence of evidence of explicit Congressional intent and the mandate of *Errico* to interpret a statute to favor an alien in deportation proceedings, the statute should be interpreted as requiring a single term of five years of imprisonment. Thus, the Government has not shown that the amendments to 8 U.S.C. § 1182(c) caused Defendant to be ineligible for § 212(c) relief under *St. Cyr*.

## C. The Merits of Defendant's § 212(c) Claim

We consider the merits of Defendant's claim from the standpoint of an immigration judge at the time of Defendant's original deportation. In 1978, the Board of Immigration Appeals ("BIA") set forth the factors which immigration judges should use to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of § 212(c) relief appears in the best interests of this country." *See Matter of*

*Marin,* 16 I. & N. Dec. 581, 584 (August 4, 1978). *See also, Lovell v. INS,* 52 F.3d 458, 461 (2d Cir.1995) (relying on BIA standard in *Marin* ); *Gonzalez v. INS,* 996 F.2d 804, 807 (6th Cir.1993) (relying on BIA standard in *Marin* ). In *Marin,* the BIA delineated both adverse and positive factors to be considered:

> Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's immigration laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country ... Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

*Marin,* 16 I. & N. Dec. at 584–85.[6]

The balancing of several factors related to Defendant presents a close case. With respect to *Marin's* adverse factors, Defendant had a serious criminal record which presents evidence of Defendant's undesirability as a permanent resident. Related to his criminal history, Defendant does not submit any evidence whatsoever of behavior in prison that would have indicated rehabilitation in 1997. Defendant's time in prison for three and a half years directly prior to his deportation hearing hindered Defendant from presenting any suggestion of rehabilitation other than his invariable acceptance of responsibility for his crimes by pleas of guilty.

The extensive criminal record, though adverse to Defendant's position, is not determinative. By the time of Defendant's deportation hearing, the BIA had made clear that it "has never implemented ... a strict policy of denying section 212(c) relief to every alien convicted of a serious drug offense without regard to the totality of circumstances presented in the case." *Matter of Burbano,* 20 I. & N. Dec. 872, 879 (September 13, 1994). The BIA has granted § 212(c) relief to aliens who have been convicted of serious drug offenses. *See e.g., In re Catalina Arreguin De Rodriguez,* (Rodriguez) 21 I. & N. Dec. 38, 39 (BIA May 11, 1995) (the BIA granted § 212(c) relief to an alien convicted of importing 78.45 kilograms of marijuana). Nonetheless, in the case of serious drug offenders, the BIA requires a showing of "unusual or outstanding countervailing equities" by applicants seeking discretionary relief. *Marin,* 16 I. & N. Dec. at 586, n. 4.

In several cases in which aliens had criminal records including narcotics convictions similar to Defendant, the BIA and immigration judges pursued a careful balancing of factors before making their determinations, though they ultimately declined to grant discretionary relief to the

---

**6.** The BIA further clarified that though "applicants for section 212(c) relief who have criminal records will ordinarily be required to make a showing of rehabilitation," it is possible for a confined alien to make a showing of rehabilitation or succeed in showing that relief should otherwise be granted. *Marin,* 16 I. & N. Dec. at 588. A showing of rehabilitation is not an "absolute prerequisite to a favorable exercise of discretion" as "aliens must be evaluated on a case by case basis, with rehabilitation a factor to be considered." *Matter of Edwards,* 20 I. & N. Dec. 191, 196 (May 2, 1990).

aliens. In *Burbano*, the alien had a similar, if not more serious criminal record than Defendant in this case, including three convictions for drug offenses, and three convictions for theft-related crimes. *Burbano*, 20 I. & N. Dec. at 875, n. 3. The BIA, in evaluating the alien's claim, carefully reviewed his equities which included ten years of Unite States residence and a handful of relatives in the United States, including a step child. *Id.* at 875–76. In *In re Soriano*, 21 I. & N. Dec. 516, 521–22 (BIA June 27, 1996), the alien had a similar criminal record to that of Defendant here, but unlike Defendant, had arrived in the U.S. at age 25, lived here for only ten years, and had various family members living in his country of origin, including children and siblings. The BIA again reviewed the alien's equities carefully finding them significant, but insufficient to overcome the numerous criminal convictions.

Here, unlike Mr. Burbano and Mr. Soriano, Defendant did not come to the United States as an adult. He came as a child of four. Since *Marin*, the BIA has continued to emphasize "particularly" the early age of arrival to the United States as a significant factor. In none of the cases cited by the prosecution or Defendant is the subject an alien who entered the United States as a toddler.[7] Here, Defendant had been living 31 years in this country, three times as long as Mr. Burbano and Mr. Soriano. As noted *supra* in footnote seven, none of the cases cited by the Government involved aliens who had been in the

United States for a longer period of time than Defendant. Furthermore, Defendant had extraordinary family ties within the United States, including parents, grandparents, siblings, aunts, uncles and cousins, as well as a common law spouse and citizen children and grandchildren, and he had no family ties whatsoever in the Dominican Republic. Prior to his incarceration, Defendant had been the primary caretaker for his common law spouse and children. Defendant had an extensive employment history, albeit broken up by prison sentences, and was working up until the time of his final arrest before his deportation. Defendant was also responsible for caring for his maternal grandmother. Defendant's grandmother was completely dependant on Defendant in every respect, and Defendant's total dedication to the health and well-being of his maternal grandmother evidences good character of the sort that favors § 212(c) relief.

Most significant, Defendant's arrival in the United States at the age of four translates into a complete lack of all ties in the Dominican Republic, as all of Defendant's acquaintances, school mates, friends, and co-workers reside in the United States. Defendant was raised in the United States and knows no other life outside of this country, rendering deportation a considerable hardship for Defendant to endure. Deportation to a place where Defendant has no ties at all, family or otherwise, brings to mind the slow agony of Philip Nolan in *The Man Without a Country*[8]

---

7. *See e.g., Edwards*, 20 I. & N. Dec. at 192 (admitted to U.S. in his twenties, resided in the U.S. for 21 years); *Matter of Roberts*, 20 I. & N. Dec. 294 (May 1, 1991) (admitted to United States at age 29, resided in the U.S. for 11 years, had father and aunt residing in home country); *Arango–Aradondo v. INS*, 13 F.3d 610, 611 (2d Cir.1994) (admitted to United States in his twenties, resided in the U.S. for 25 years, made two return visits to home country during the time he was living in the

U.S.); *Lovell v. INS*, 52 F.3d at 460 (arrived in the United States at age 30, resided in the U.S. for nine years); *Rodriguez*, 21 I. & N. Dec. at 38 (began residing in the United States at age 17, lawfully resided in the U.S. for less than 20 years); *Marin* 16 I. & N. Dec. at 583 (admitted to the U.S. at age 33, resided in the U.S. for 12 years, had only relatives in home country).

8. Hale, Edward E., *The Man Without a Country*. Harvard Classics (1863).

and is precisely the kind of "banishment" and "exile" mentioned by the Supreme Court in *Errico* which is meant to be avoided whenever possible as an alternative of last resort. *Errico*, 385 U.S. at 225, 87 S.Ct. 473.

On balance, the positive factors presented in Defendant's favor,[9] particularly his history of 33 years of residence in the United States starting in early childhood, his extraordinary family ties, his employment history, and the extreme hardship to him and his family as a result of his deportation outweighs Defendant's lengthy criminal record such that there is a reasonable likelihood or a substantial probability that an immigration judge in 1997, had he heard the application, would have granted § 212(c) relief. We dismiss Defendant's indictment for illegal reentry based on the prior improper deportation. *See United States v. Perez*, 213 F.Supp.2d 229, 234–35 (E.D.N.Y.2002) (dismissing indictment for illegal reentry based on an improper deportation after a conviction for attempted criminal sale of a controlled substance based on ineffective assistance of counsel and the substantial probability that a properly prosecuted § 212(c) application would have been successful).

*Conclusion*

For the foregoing reasons, the motion is hereby granted.

IT IS SO ORDERED.

---

9.   Defendant has proffered no evidence of service in the Armed Forces, community service, or property and business ties.