UNITED STATES of America,

v.

Nicolo COTTONE, Defendant.

No. 02 CR 463(ADS).

United States District Court,
E.D. New York.

Feb. 14, 2003.

Roslynn R. Mauskopf, United States At-
torney, Eastern District of New York by

Richard P. Donoghue, Assistant United States Attorney, Central Islip, NY, for U.S.

The Legal Aid Society by Leonard F. Joy, Esq., Tracey L. Eadie Gaffey, Esq., Central Islip, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court is a motion by Nicolo Cottone ("Cottone" or the "defendant") to dismiss an indictment charging him with illegal reentry after deportation subsequent to a conviction for commission of an aggravated felony.

## I. BACKGROUND

Cottone was born in Italy and emigrated to the United States in 1970 when he was 16 years old. The defendant's ex-wife and his adult children are United States citizens. Although Cottone never became a naturalized citizen, he was a legal resident of the United States.

On February 11, 1993, the defendant pled guilty to Robbery in the Second Degree, in violation of New York Penal Law § 160.10, and was sentenced to an indeterminate term of three to nine years in prison. On July 14, 1995, the defendant was paroled to the United States Immigration and Naturalization Service ("INS"). The defendant was detained by the INS until he posted bail for his release. On March 4, 1997, an Immigration Judge ("IJ") ordered that the defendant be deported to Italy. Because of the defendant's robbery conviction and his two prior narcotics convictions, the IJ found that Cottone was deportable as an aggravated felon and held that the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") precluded him from being considered for discretionary relief under Section 212 of the Immigration and Naturalization Act ("INA").

On March 24, 1997, the defendant filed an appeal. to the Board of Immigration ("BIA"). On February 3, 1998, the BIA dismissed the appeal holding that AEDPA precluded him from being eligible for discretionary relief under Section 212(c) and that he was deportable. In an affirmation dated November 20, 2002, Edward Cuccia, the attorney who represented the defendant during his deportation proceedings, stated that the BIA decision was forwarded to him and that he then mailed a copy of the decision to the defendant's home address. Mr. Cuccia also stated that his law firm placed a telephone call to the defendant. Nevertheless, Mr. Cuccia asserts that his files do not indicate that Cottone received the decision.

On May 5, 1998, Cottone began serving a 90 day sentence in the Nassau County Correctional Facility for petit larceny. On June 6, 1998, the INS issued a deportation warrant for the defendant. On July 17, 1998, the INS lodged a detainer with the Nassau County Correctional Facility.

After serving his 90–day sentence on the attempted petit larceny charge, the defendant began serving a separate sentence for a parole violation. On November 16, 1998, Cottone was mandated to the Willard Drug Treatment Center. On December 29, 1998, INS lodged a detainer with Willard.

On March 9, 1999, the defendant was released from Willard, and INS took him into custody for deportation. Twenty days later on March 29, 1999, Cottone was deported to Italy pursuant to the IJ's March 4, 1997 order. The defendant did not challenge the BIA's denial of his appeal.

On or about December 10, 2001, Cottone was found in the United States and subsequently indicted and charged with illegal

reentry following deportation in violation of 8 U.S.C. § 1326(a) and (b)(2). On February 7, 2003, the defendant moved to dismiss the indictment on the ground that he was denied due process during the deportation proceedings.

## II. DISCUSSION

■ Section 1326(a) makes it a crime for an alien who has been deported or removed to enter, attempt to enter, or be found in the United States without the express consent of the Attorney General. 8 U.S.C. § 1326(a). Because a prior deportation is an element of this crime, a defendant charged pursuant to Section 1326(a) may collaterally attack the validity of a prior deportation order and proceedings. *United States v. Mendoza–Lopez*, 481 U.S. 828, 837–39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987); *United States v. Gonzalez–Roque*, 301 F.3d 39, 45 (2d Cir.2002).

■ To challenge a deportation order, the defendant must demonstrate that, (1) he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). Because these requirements are conjunctive, the defendant must establish all three prongs to prevail. *United States v. Fernandez–Antonia*, 278 F.3d 150, 157 (2d Cir.2002).

### A. Administrative Exhaustion

■ Because the BIA's decision is the final administrative decision, an appeal from an IJ to the BIA generally satisfies the exhaustion requirement. *Mejia–Ruiz v. INS*, 51 F.3d 358, 364 (2d Cir.1995). Here, the parties do not dispute that Cottone exhausted his administrative remedies by appealing before the BIA.

### B. Deprivation of Judicial Review

■ As to the second prong, Cottone argues that he did not have the opportunity to pursue judicial habeas review of his deportation order because he was unaware that his appeal had been dismissed. The defendant explains that his deportation to Italy within twenty days of his arrest on the deportation warrant precluded any chance he had of pursuing judicial review of the BIA's dismissal of his appeal. Relying on *United States v. Gonzalez–Roque*, 301 F.3d 39 (2d Cir.2002), the Government argues that he fails to satisfy the second prong on the grounds that, (1) nothing in the deportation proceeding in and of itself deprived him of the opportunity for judicial review; and (2) while the defendant submitted an appeal to the BIA, he failed to pursue a judicial habeas review of his deportation order.

In *Gonzalez–Roque*, an alien was charged with illegally reentering the United States and then moved to dismiss the indictment pursuant to a collateral attack upon his deportation proceedings. *Id.* Despite the fact that habeas corpus review remained available pursuant to 28 U.S.C. § 2241, Gonzalez–Roque did not seek decisional review of his deportation. *Id.* at 45. As such, the Second Circuit found that the defendant failed to show that he was improperly denied the opportunity for judicial review. *Id.*

Cottone contends that his situation differs significantly from the defendant's in *Gonzalez–Roque*. In particular, the defendant asserts that while incarcerated for 90 days on a charge of attempted petit larceny, "he informed the INS that he had an appeal pending (or so he thought) and he requested a hearing." In addition, Cottone argues that "he did not have the opportunity to pursue a habeas corpus

remedy because of the rapidity with which the INS ejected him from the United States." The Court disagrees.

Between the period of the BIA's dismissal of his appeal on February 3, 1998 and his deportation on March 29, 1999, a period of 13 months, Cottone could have pursued judicial habeas review of his deportation order, but failed to do so. The BIA's decision, which was rendered on February 3, 1998, was forwarded to Mr. Cuccia, his attorney. Mr. Cuccia stated that his law firm placed a telephone call at the defendant's last available number and that he mailed a copy of the decision to the defendant's home address. It was not until May 5, 1998, approximately three months after the BIA forwarded the decision to Mr. Cuccia, that Cottone began serving his 90 day sentence in the Nassau County Correctional Facility. After serving his 90 day sentence, the defendant began serving a separate sentence for a parole violation. On June 6, 1998, the INS issued a deportation warrant for Cottone, and on July 17, 1998, the jail received a copy of the INS detainer. Cottone was then transferred to the Willard Drug Treatment Center where a copy of the INS detainer was served on the facility on December 29, 1998. In light of the foregoing, the Court is not persuaded that the defendant was unaware that the BIA had denied his appeal until March 9, 1999 when INS took him into custody for deportation.

Furthermore, the Court notes that the defendant proffers no evidence to support his claim that he was unaware of the BIA's dismissal of his appeal until March 9, 1999. Mr. Cuccia represented the defendant for several years throughout his deportation proceedings. As the Government points out, Mr. Cuccia appealed the deportation order promptly to the BIA and was presumably familiar with the defendant's case. In addition, the defendant does not suggest that he was prevented from contacting Mr. Cuccia and inquiring about the status of his deportation. Accordingly, because Cottone failed to seek a judicial review of his deportation order, the Court finds that he was not denied the opportunity for judicial review.

## C. Fundamental Fairness

■ To establish that the deportation proceedings were fundamentally unfair, the defendant must show "both a fundamental procedural error and prejudice resulting from the error." *United States v. Fernandez–Antonia*, 278 F.3d 150, 159 (2d Cir.2002). In determining whether the defendant satisfies this third prong, it is crucial to first understand the landscape surrounding Section 212(c) of the INA.

Prior to 1996, the Attorney General of the United States possessed broad discretion to waive the deportation of certain resident aliens under Section 212(c). 8 U.S.C. § 1182(c). However, in 1996, Congress passed two pieces of legislation that repealed the relief available under Section 212(c). *See* AEDPA; Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"). In particular, AEDPA made certain classes of criminals, including those convicted of an aggravated felony, ineligible for relief from deportation under Section 212(c). *See* AEDPA § 440(d); 8 U.S.C. § 1227. Shortly thereafter, Congress enacted IIRIRA which repealed Section 212(c) on a prospective basis. *See* § 240A, 8 U.S.C. § 1229b(a). Then in *INS v. St. Cyr*, 533 U.S. 289, 290, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that the repeal of Section 212(c) did not apply retrospectively to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of the plea under the law then in effect."

In the present case, the defendant claims that the IJ erroneously informed him that he could not proceed with his application for Section 212(c) relief because his prior conviction, an aggravated felony, precluded him from receiving such relief under the provisions of the AEDPA. Cottone asserts that his conviction occurred in 1993, before the enactment of the 1996 amendments. Relying on the ruling in *St. Cyr*, the defendant argues that he was denied due process in that both the IJ and BIA incorrectly interpreted the AEDPA as applying retroactively to the defendant to bar his request for relief. The Court disagrees.

The Supreme Court has held that fundamental fairness is solely an issue of procedural due process. *United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Although Cottone argues that he was "denied due process in that he was deprived of the opportunity to present evidence in support of his petition for 212(c) relief," the Court deems his allegation to be a substantive one. The defendant claims that he should have been allowed to apply for 212(c) relief. A review of the transcripts of the deportation proceedings reveals that his request for 212(c) was denied because of the IJ's interpretation of Sections 212(c) of the INA. The IJ's misunderstanding of Section 212(c) does not implicate procedural due process. As such, because the crux of Cottone's argument is that the IJ and the BIA misinterpreted the statute, the Court will not permit the defendant to couch his allegations, which are substantive in nature, into a procedural due process claim.

Furthermore, the Court notes that a substantive inquiry into the deportation order is inappropriate because the principles articulated in *St. Cyr* only apply to cases on direct review and not to cases which previously became final. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995); *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 98, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (stating that when a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still *on direct review* and as to all events regardless of whether such events predate or postdate our announcement of the rule") (emphasis added). The Government correctly asserts that when *St. Cyr* was decided, the defendant's deportation case was not open on direct review. Thus, because Cottone's final deportation order was executed and his case was closed, *St. Cyr* does not apply retroactively or collaterally to this case. *United States v. Sullivan*, No. 00 CR 695, 22002 WL 31819611, at *6 n. 4 (E.D.Pa. Dec. 23, 2002); *United States v. Hernandez–Rodriguez*, 170 F.Supp.2d 700, 704 n. 2 (N.D.Tex.2001). Accordingly, the Court finds that the defendant fails to show that the deportation proceedings were fundamentally unfair.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the defendant's motion to dismiss the indictment is **DENIED.**

**SO ORDERED.**