**UNITED STATES,**

v.

**Jose FRIAS–GOMEZ, Defendant.**

**No. 02 CR 1338(JBW).**

United States District Court,
E.D. New York.

May 15, 2003.

Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York by Taryn A. Merkl, Assistant United States Attorney, Brooklyn, NY, for United States.

Law Offices of Saghir by Uzmah Saghir, Brooklyn, NY, for Defendant.

MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

I.  Introduction

Defendant Jose Frias–Gomez was charged in a two count indictment with

attempted illegal re-entry in violation of 8 U.S.C. § 1326(a) and (b)(2) and the use and attempted use of a false, forged, counterfeited, mutilated, and altered passport in violation of 18 U.S.C. § 1543. He moves to dismiss count 1 of the indictment, attempted illegal reentry, under Federal Rule of Criminal Procedure 12(b)(2) and the Fifth Amendment. The motion is granted. Mr. Frias–Gomez's prior deportation proceedings violated his due process rights by improperly denying him the opportunity to apply for discretionary relief from deportation. Those proceedings cannot be relied upon to establish the prior deportation or removal necessary to sustain a charge of attempted illegal re-entry. *See United States v. Mendoza–Lopez,* 481 U.S. 828, 837–39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987); *see also United States v. Gonzalez–Roque,* 301 F.3d 39, 45 (2d Cir.2002).

## II. Facts

Jose Frias–Gomez is a citizen of the Dominican Republic. In August 1980, Mr. Frias–Gomez was issued a visa. He entered the United States in September of that year at the age of eleven as a lawful permanent resident. His father, stepmother, three full siblings, three paternal half siblings, and one maternal half sibling all currently reside and work in or near Trenton, New Jersey. His mother, before her death from cancer in 1987, had also lived in Trenton for fourteen years.

On October 22, 1993, Mr. Frias–Gomez was convicted after a jury trial in Mercer County Superior Court in New Jersey of possession of a controlled substance with intent to distribute it on or near school property in the third degree. *See* N.J. Stat. Ann. §§ 2C:35–7, 2C35–5a(a) and 5b(3); Exhibit A to Government's Appendix in Support of Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Indictment ("Government's Memoran-

dum"). He was sentenced to a term of four years in prison.

In December 1995, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, initiating deportation proceedings against Mr. Frias–Gomez on the charge that he was deportable pursuant to Immigration and Nationality Act ("INA" or "the Act") section 241(a)(2)(B)(i) (convicted of violation of a law relating to a controlled substance) and INA section 241(a)(2)(A) (convicted of an aggravated felony). *See* Exhibit B to Government's Memorandum. This Order to Show Cause was served on Mr. Frias–Gomez on January 4, 1996. *See id.;* Exhibit C to Government's Memorandum at 1–2.

After completing his term of imprisonment, Mr. Frias–Gomez was transferred to the custody of the INS. A hearing on the merits of the deportation proceedings against him was held on April 22, 1997. Mr. Frias–Gomez through counsel applied for discretionary relief from deportation under former section 212(c) of the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1182(c). The Immigration Judge, while expressing thoughtful concern at numerous points during this hearing and prior bond hearings over the applicability of the amendments in the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") to Mr. Frias–Gomez, ultimately found that the hands of the immigration court were tied by the clearly stated position of the Department of Justice that AEDPA and IIRIRA's elimination of section 212(c) relief was retroactive. *See* Exhibits C, D, E, and F; *see also* Office of Legal Counsel, United States Department of Justice, *Authority of the Attorney General to Grant Discretionary Relief from Deportation under Section 212(c) of the Immigration and Nationality Act* (Feb.

21, 1997) (reversing the position taken by the BIA in *Matter of Soriano*, 21 I. & N. Dec. 516 (BIA 1996), that the bar to section 212(c) relief applied only to applications filed after the date of enactment of the amendments).

Mr. Frias–Gomez was found not eligible to apply for 212(c) relief and was ordered removed to the Dominican Republic. His right to appeal was reserved, and the Immigration Judge explained that an appeal must be filed with the Board of Immigration Appeals within thirty days, that is, by May 21, 1997. *See* Exhibits E, F to Government's Memorandum (There is what appears to be an error in the transcript, Exhibit E to the Government's Memorandum, at p. 4. It says first that Mr. Frias–Gomez has until May 21 to file an appeal, but later refers to the date of April 21. Since the hearing was being held on April 22, April 21 cannot possibly be the correct date.) On May 9, 1997, over a week before that deadline, Mr. Frias–Gomez was deported. *See* Exhibit G to Government's Memorandum.

On October 27, 2002, Mr. Frias–Gomez attempted to re-enter the country through John F. Kennedy International Airport. He presented a passport bearing the name "Sidney Preston Bradsher, Jr." and his own photograph to inspectors from INS. INS identified the passport as lost or stolen, and identified Mr. Frias–Gomez through his fingerprints.

Mr. Frias–Gomez pled guilty before a Magistrate Judge to count 1 of the indictment, attempted illegal reentry, but that plea has not yet been accepted by the court.

III. Law

  A. Illegal Reentry and Collateral Attack

■ Section 1326(a) of Title 8 of the United States Code makes it a crime for a deported or removed non-citizen to enter, attempt to enter, or be found in the United States without the express consent of the Attorney General. Deportation proceedings are not valid and cannot be used to establish a prior order of deportation for purposes of a criminal prosecution for illegal reentry if the proceedings failed to afford the non-citizen due process of law. *See United States v. Mendoza–Lopez*, 481 U.S. 828, 837–39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ("Even with this safeguard, the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling."); *see also United States v. Gonzalez–Roque*, 301 F.3d 39, 45 (2d Cir.2002). A non-citizen charged with a violation of section 1326 may collaterally attack the validity of a prior deportation order and proceedings since the order is a necessary element of the charged criminal offense. *See* 8 U.S.C. § 1326(d).

  A collateral challenge can be sustained only if:

  1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

  2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

  3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

  In many cases, all three elements of 1326(d) overlap significantly. The government in the instant case commendably conceded that under the circumstances defendant exhausted his remedies and was improperly deprived of the opportunity for judicial review. This leads, therefore, to the third question—Was the entry of the order of deportation against Mr. Frias—Gomez fundamentally unfair?

**14**

## B. Fundamentally Unfair

■ A non-citizen attempting to demonstrate on collateral review "that his hearing was so fundamentally unfair that it constituted a denial of his Fifth Amendment right to due process ... must show both a fundamental procedural error and prejudice resulting from that error." *United States v. Fernandez–Antonia,* 278 F.3d 150, 159 (2d Cir.2002). Improper denial of the opportunity to apply for discretionary relief is a fundamental procedural error. *See United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir.2000) (finding that the defendant "was deprived of exactly the same opportunity [to apply for discretionary relief from deportation], and thus was denied due process and a meaningful opportunity for judicial review"); *United States v. Calderon,* 2003 WL 1338943, at *6 (E.D.N.Y. Jan.9, 2003) ("misinforming an alien as to the availability of discretionary relief is a procedural error so fundamental that it functionally deprives an alien of judicial review"); *United States v. Aguirre–Tello,* 181 F.Supp.2d 1298, 1304 (D.N.M.2002) ("the [Immigration Judge's] failure to properly inform Defendant of his eligibility for discretionary relief alone constitutes a due process violation"); *cf. United States v. Fernandez–Antonia,* 278 F.3d 150 (2d Cir. 2002) (considering whether prejudice resulted from denial of the opportunity to apply for discretionary relief from deportation under section 212(h) of the INA). *But see United States v. Cottone,* 244 F.Supp.2d 126, 130 (E.D.N.Y.2003) ("The IJ's misunderstanding of Section 212(c) does not implicate procedural due process.").

In order to show prejudice, a non-citizen as a practical matter must make "some showing" that, absent the procedural error or errors the result of the deportation proceedings might have been different. *See Fernandez–Antonia,* 278 F.3d at 157–59. *Compare United States v. Sanchez–Peralta,* 1998 WL 63405, at *12 (S.D.N.Y. Feb.13, 1998) (requiring a showing of a "reasonable likelihood" that the non-citizen would not have been deported) *with United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996) (requiring a showing of "plausible grounds for relief").

## C. Deportation and 212(c) Relief

If Mr. Frias–Gomez was prejudiced by an improper denial of the opportunity to apply for discretionary relief from deportation, then he can successfully attack his prior order of deportation. The question, then, is whether he was eligible for some discretionary relief at the time of his deportation proceedings.

Prior to the amendment of the INA in 1996, former section 212(c) allowed non-citizens in removal proceedings meeting the statutory criteria to apply for a discretionary waiver of deportation. *See* 8 U.S.C. § 1182(c) (1994). After section 440(d) of the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), narrowed the scope of section 212(c), the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), *inter alia,* repealed it entirely and replaced it with a provision giving the Attorney General discretion to cancel the removal of a narrowly defined groups of non-citizens not including those who had committed one of a growing number of crimes defined as aggravated felonies under immigration law. *See* 8 U.S.C. § 1229b(a). For further history and discussion of the repeal of section 212(c), see *INS v. St. Cyr,* 533 U.S. 289, 294–97, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

The permanent rules of IIRIRA took effect on April 1, 1997, before Mr. Frias–Gomez's final hearing before the immigration judge was held. *See* IIRIRA

§ 309(a), note to 8 U.S.C. § 1101 (IIRIRA was enacted on Sept. 30, 1996; April 1, 1997 is the first day of the first month beginning more than 180 days after that date of enactment). Those permanent rules do not, however, apply in all immigration proceedings conducted after that date. Section 309(c)(1) provides that, as a general rule, "in the case of an alien who is in exclusion or deportation proceedings before the ... effective date-(A) the amendments made by this subtitle shall not apply, and (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments." *See* note to 8 U.S.C. § 1101. In practice, this means that deportation proceedings commenced prior to April 1, 1997 and resulting in a deportation order that becomes administratively final after October 30, 1996 are governed by the transitional rules of IIRIRA contained in its section 309. *See Henderson v. INS*, 157 F.3d 106, 117 (2d Cir.1998); IIRIRA § 309(4)(A) (October 30 is thirty days after the enactment of the act). Under the applicable regulations, deportation proceedings are commenced when an Order to Show Cause or other charging document is filed. *See* 8 C.F.R. § 3.14 (1994); 8 C.F.R. § 3.13 (1994); 8 C.F.R. § 242.1 (1994).

The "amendments made by this subtitle" not applicable to deportation proceedings pending on April 1, 1997 include the elimination of section 212(c) relief from deportation. Noncitizens in deportation proceedings on April 1st who otherwise met the statutory criteria remained eligible for such relief. *See Zayas v. INS*, 311 F.3d 247, 249 (3rd Cir.2002) ("The repeal [of section 212(c) ] operated with respect to cases in which the INS instituted deportation proceedings on or after April 1, 1997; because the proceedings against Zayas had been instituted before that date, the repeal did not affect him."); *Jimenez–Angeles v. Ashcroft*, 291 F.3d 594, 598 (9th Cir.2002) ("[A]n alien may apply for the pre-IIRIRA remedy of suspension of deportation if deportation proceedings against her were commenced before April 1, 1997."); *cf. INS v. St. Cyr*, 533 U.S. 289, 318, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("Nothing in either § 309(c)(1) or the statute's legislative history even discusses the effect of the statute on proceedings based on pre-IIRIRA convictions that are commenced *after* its effective date. Section 309(c)(1) is best read as merely setting out the *procedural* rules to be applied to removal proceedings pending on the effective date of the statute." (emphasis in original)); *Rankine v. Reno*, 319 F.3d 93, 96 (2d Cir.2003) ("In removal proceedings commenced after April 1, 1997, therefore, resident aliens convicted of an aggravated felony are no longer eligible for any form of discretionary relief from deportation.").

Although by its terms section 212(c) applied only to non-citizens in exclusion proceedings after seeking to enter the United States, it was interpreted to encompass non-citizens in deportation proceedings as well. *See, e.g., Francis v. INS*, 532 F.2d 268 (2d Cir.1976). In order to be statutorily eligible, a non-citizen must have been a permanent resident alien, have had a lawful unrelinquished domicile in the United States of seven consecutive years, and not have served a term of imprisonment greater than five years as a result of conviction for one or more aggravated felonies as defined under the act. *See* 8 U.S.C. 1182(c) (1994).

An Immigration Judge, when considering whether to exercise discretion to grant a section 212(c) application made by an non-citizen meeting these criteria, would "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf." *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978). Positive factors to be considered

include family ties within the United States, length of residence in the United States, evidence of hardship to the non-citizen and the non-citizen's family in the event of deportation, employment history, property or business ties, evidence of good character, and likelihood of positive contributions to American society. *Lovell v. INS,* 52 F.3d 458, 461 (2d Cir.1995). Adverse factors that would impact on the Immigration Judge's decision are the nature and circumstances of the cause for deportation, additional immigration law violations, the existence, recency, seriousness, and nature of a criminal record, and other indications of an non-citizen's bad character or undesirability as a permanent resident. *Lovell,* 52 F.3d at 461 (citing *Marin,* 16 I. & N. Dec. at 584–85). More than 50% of 212(c) applications between 1989 and 1995 were approved. *INS v. St. Cyr,* 533 U.S. 289, 296 n. 5, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

## IV. Application of Law to Facts

■ Mr. Frias–Gomez's deportation proceedings were commenced in December 1995. *See* Exhibit B to Government's Memorandum of Law; Exhibit C to Government's Memorandum at 1 2. The Order to Show Cause was dated and signed on two different dates in December, and was served on Mr. Frias–Gomez in January 1996. Because December 1995 is prior to April 1, 1997 and Mr. Frias–Gomez's final order of deportation was entered, if at all, subsequent to October 30, 1996, the proceedings should have been governed by IIRIRA's transitional rules, under which discretionary relief from deportation under section 212(c) should have remained available.

The entry of the deportation order against Mr. Frias–Gomez was fundamentally unfair. He was improperly denied the opportunity to apply for section 212(c) relief during his deportation proceedings, and was deported before he could contest that decision. These are fundamental procedural errors. While it may be assumed for purposes of this proceeding that since Mr. Frias–Gomez was represented by counsel he could have pursued his appeal subsequent to his deportation (although this is not entirely clear), to require him to do so could be in itself considered to be a significant error. An order of deportation only becomes final "upon dismissal of an appeal by the Board of Immigration Appeals, upon waiver of appeal, or upon expiration of the time allotted for an appeal when no appeal is taken." *See* 8 C.F.R. § 243.1 (1994). Mr. Frias–Gomez appears to have been deported in the absence of a final order of deportation.

Mr. Frias–Gomez can make a plausible showing that these errors prejudiced him. He was statutorily eligible for a waiver of deportation under former section 212(c). He was a lawful permanent resident, had lived in the United States for more than double the seven consecutive years required, and served a term of imprisonment of less than five years.

If Mr. Frias–Gomez had been granted a section 212(c) hearing, there is a strong possibility that he would not have been deported. He had strong ties to the United States. He entered the United States as a lawful permanent resident at the age of 11 and lived in the United States until his deportation, a period of more than fifteen years. His large family, with which he was close, has also lived in the United States for an extended period of time. He apparently has no family or close friends in the Dominican Republic. He has a thirteen year old citizen daughter in the United States with whom he would like to build a relationship. Before his conviction, he was steadily employed and a contributing member of the community. Although the crime for which he was deported is a serious one, it is not heinous and is essentially

his only criminal history, arguably constituting an aberration for immigration purposes.

## V. Conclusion

Because the deportation order violated Mr. Frias–Gomez's due process rights, it cannot be relied upon to establish the prior deportation or removal needed to sustain a charge of illegal re-entry under section 1326 of title 8 of the United States Code. Mr. Gomez has satisfied the elements necessary to sustain a successful collateral attack under section 1326(d). Count 1 of the indictment is dismissed.

Defendant has agreed to plead guilty to count 2, use of a forged passport; he will be sentenced for this serious crime.

SO ORDERED.